## THE STATE OF ILLINOIS *v.* THE ILLINOIS CENTRAL RAILROAD COMPANY.

### ORIGINAL SUIT.

For purposes of taxation property should be assessed at its present value, and not at its prospective value.

In assessing the value of a railroad, for purposes of taxation, the inquiry should be, what is the property worth, to be used for the purposes for which it was designed, and not for any other purposes to which it might be applied ?

In such a case, if the property is devoted to the use for which it was designed, and is in a condition to produce its maximum income, one very important element for ascertaining its present value, is the amount of its net profits.

This, however, should not be the absolute standard of value. There should be taken in connection with it, the inquiry, what would a prudent man give for the property as a permanent investment, with a view to present and future income ?

ALL the facts of this case are fully set out in the opinion of the Court by Mr. Justice BREESE.

The case was originally commenced in the Second Grand Division, but by consent, was finally heard and determined at Mount Vernon in the First Grand Division.

J. B. WHITE, State's Attorney, S. T. LOGAN and M. HAY, for The People.

J. M. DOUGLAS, and A. LINCOLN, for the Railroad Company.

BREESE, J.* This is an action of debt originally brought in this court, against the defendants, for taxes alleged to be due to the State, for the year 1857, by the defendants, and unpaid.

To the declaration, the defendants have pleaded the general issue, payment, and set-off for over-payments, on which issues are made up. It is these issues, and these only, we are called upon to try.

After the institution of this suit, on the 31st of January, 1859, it was agreed between the parties, that in order to com-

---

* NOTE. This case was heard at a term anterior to that named in the caption.

ply with the 22d section of the charter of the Illinois Central Railroad Company, (Session Laws 1851, page 72), requiring them, after the expiration of six years from the grant of the charter, to list their stock, property and assets for the purpose of State taxation, the defendants, on the 13th day of August, 1857, filed with the Auditor of State, a paper, of which Exhibit A filed in the cause, is a true copy. But upon this, the auditor assessed a tax for that year, amounting to the aggregate sum of one hundred and thirty-two thousand and sixty-seven and forty-four one-hundredths dollars, being so assessed at sixty-seven cents on the one hundred dollars on the aggregate sum of nineteen million seven hundred and eleven thousand five hundred and fifty-nine, and fifty-nine one-hundredths dollars, and that for the non-payment of this assessment, this suit is brought. It was further agreed, that for the year 1857, the defendants paid into the State treasury, the sum of one hundred and forty-five thousand six hundred and forty-five and thirty-two one-hundredths dollars, a portion of which, namely, one hundred and eight thousand and eighteen and sixty-one one-hundredths dollars, was to apply to the five per cent. of gross proceeds provided for in section eighteen of the charter, and the remainder, namely, thirty-seven thousand six hundred and twenty-seven and twenty-one one-hundredths dollars, was to apply to the object of the assessment above mentioned. It was then agreed, that on the trial, this court might receive evidence from both the parties, or either of them, as to the true value of the stock, property and assets contained in the list, at the time of filing it, and might, if this court should be of opinion the true value at the time of listing, is the true legal basis for the assessment, modify the assessment so as to conform to such basis, provided that in this case, the aggregate value of the stock, property and assets shall not be reduced below thirteen million of dollars, and provided further, that this case shall not, as fixing a basis of assessment, be claimed as a binding precedent in any future case, in or out of court. It was further agreed, that the only questions to be submitted to the court and to be decided, are,

First. Whether by the charter of said company, that company is liable to pay any taxes exceeding in amount two per cent. on their gross receipts, and whether if the taxes assessed on their property, exceed the amount of the two per cent. on the gross receipts of the road, the company is bound to pay the balance of the taxes.

Second. The court is to decide on evidence, whether the property of the railroad has been estimated too high, and if

too high, how much it should be reduced to make it conform to its real taxable value, provided it is expressly agreed that the valuation shall not be reduced below thirteen million of dollars; and,

Third. If the court decides that the company is bound to pay taxes if they exceed two per cent. of the gross proceeds of the road, then the court shall give judgment in favor of the plaintiff for such amount as the taxes, at the rate of sixty-seven cents on the one hundred dollars, on the assessed value as fixed by the court, exceed the two per cent. aforesaid of the gross receipts of the road paid into the treasury for that fiscal year.

At the date of this agreement, a bill was pending before the legislature then in session, for an act in relation to assessments of the Illinois Central Railroad Company, when it was stipulated by these parties on the 18th February, that in the event of the passage of that bill, there should be no revaluation of the property of the company, nor any appeal from the assessment for the year 1857, but the counsel for the State agreed to remove the limit of thirteen million of dollars, and leave the valuation as entirely open to the court. The bill referred to became a law on the 21st of February, 1859.

Exhibit A is nothing more than the list of the property owned by the company, and its valuation, as made by them and returned to the auditor.

The argument on the first proposition was not presented fully to the court, but alluded to only by the counsel for the State. It was considered, as the case then stood, it would be unnecessary to make up any decision upon it. The case turned upon the second proposition, as to the valuation of the property, and on that point it was agreed that the evidence heard by this court, at the last November term, held for the first grand division, should be considered as before the court now here. That testimony was taken on an appeal from the assessment of the auditor, as prescribed by the Act of 1859, (Session Laws of 1859, pages 206–7), and full evidence was produced and examined, both on the part of the People, and on the part of the defendants. The most experienced and intelligent railroad men in the West, were fully examined on all the elements of value, as subsisting in a railroad concern, and in this road particularly, ample notes of which we have preserved.

There being no conflicting testimony before the court on the question of value, the court could not hesitate in its judgment on that point, but, like a jury, were compelled to find on the evidence. Accordingly, the court directed the following order to be entered in the cause:

State of Illinois *v.* Illinois Central R. R. Co.

" THE ILLINOIS CENTRAL RAILROAD CO. ⎞  An Appeal from the Assessment of
         *vs.*         ⎟             the Auditor
THE PEOPLE OF THE STATE OF ILLINOIS. ⎠

" And now at this day come the said parties, by their attorneys, and a certified copy of the list and valuation of the stock, property and assets owned by said company, as made by the auditor of public accounts of the State of Illinois, having been filed, and from which this appeal is taken and prosecuted by said company ; and the court proceeding to hear the evidence presented by the State, and by said company, as to said valuation, do find, that the aggregate value of the stock, property and assets owned by said company, to be listed for taxation, is four million nine hundred and fifty-two thousand dollars and no more, and the clerk of this court will certify the said aggregate value so found by the court, to the auditor of public accounts, in pursuance of the statute in such case made and provided."

Some of the witnesses confined their valuation of the railroad to its present value, whilst others embraced, in their testimony, its prospective value also, but in their aggregates they do not essentially differ. We understood the witness called on the part of the State, to include its prospective value in his estimate, and with that in view he would not desire to be one of a company to take the road and operate it, at five millions.

It was urged, on the argument, by the counsel for the State, that the prospective value of the road should be taken into the estimate, and not its income. Such value is purely speculative, it must be admitted, and we very much question, if it is a proper element in the present, or any like case. The assessment is for the time being only, and the value of the property for such purpose should be limited to that time, the more especially, as in the efflux of time, other valuations are required to be made. At any subsequent assessment, the proofs adduced may show a much higher valuation. The law does not design this to be permanent by any means. The ninth section of the act, under which the appeal was taken by the company, (Session Laws 1859, p. 207,) provides, " that all the provisions of this act shall apply to the listing, valuations and assessments of said years (1857 and 1858), as well as to all future listings, valuations and assessments." If then, the property is more valuable in 1859 or in 1860, than as now found, or in subsequent years, the taxes will be assessed accordingly, so that the injunction of the constitution, " that every person and corporation shall pay a tax in proportion to the value of his or her property," will be regarded. This clause has been understood to mean, the value at the time of taxa-

tion or assessment. Values are fluctuating and changeable, as all experience shows. Nor is it easy, at any one period of time, to lay down a general and ⸱satisfactory rate of certain application, in all cases, for the purpose of ascertaining the value of many kinds of property subject to taxation. Where property has a known and determinate value ascertained by commerce in it, as in most kinds of personal property, or fixed by law as money, there can be no difficulty. But there are many kinds of property, as to which the assessor has no such satisfactory guide. Such is peculiarly the case with railroad property, and other similar property, constructed not only for the profit of the owners, but for the accommodation of the public, under the sanction and by the exercise of the sovereign power of the State. In such cases, the inquiry should be, what is the property worth to be used for the purposes for which it is constructed, and not for any other purpose to which it might be applied or converted, or for which it might be used. In such cases, if the property is devoted to the use for which it was designed, and is in a condition to produce its maximum income, one very important element for ascertaining its present value is discovered, and that is its net profits. When property is thus improved, it is manifest that it is more or less valuable, as it yields a greater. or less profit, in its product and economical use. No prudent purchaser of such property would neglect, in the first instance, to look at the income the property yields, so that he might thereby judge what profits he might, in the future, reasonably expect from his investment. To ascertain what he might safely give for the property, no doubt he would, and ought, prudently, to anticipate the future, as well as regard the past, and yet, should he give more than the value as indicated by the present income, such enhanced value would be rather speculative than real, depending on a great variety of circumstances and casualties. The anticipation that in a given time in future, the property would yield a larger income, would be the inducement to give more than its present actual value. We are not prepared to say, that an assessor, making yearly valuations of property for taxation, can, or ought to take into consideration, anything more than the value of the property at the time he is called upon to value it, since, if it does increase in value in process of time, advantage can be taken of it in future valuations, as they may be periodically made. But if he can, and does, look to the future, for the purpose of ascertaining the present value of property, he should do it with extreme caution. In this country at least, hope is so seductive, and the

State of Illinois *v.* Illinois Central R. R. Co.

future so bright, and so full of promise, there is the greatest danger that the most prudent may be mistaken, and the most considerate be misled, and it is much safer to rely upon practical demonstration, to determine the present value of such property, rather than, speculatively, enter into the unknown future, whose dark veil it is not given to us to lift, and look beyond. It is safer surely, to say, that, when the future shall be revealed, and practically exhibit an increased value of the property, then would be the proper time to assess it at such increased value.

To illustrate the argument, by the counsel for the State, that the income of the road afforded no criterion for determining its value, it was said that an uncultivated tract of land was always worth something, and often very valuable, when producing no income. This is very true, but why? It is because the land has a capacity to produce an income whenever the owner shall desire to cultivate it, and put it up to the top of that capacity. It was in proof that the railroad was already put to the extent of its capacity to yield income, and producing the utmost it can now be made to produce. If the road was lying idle, there would then be a proper comparison between it and an uncultivated tract of land or farm. If the farm is cultivated to the extent of its power of production, as the road is, the income of the farm would be a criterion of its value. It is often the case, that a farm has a fanciful value, beyond and apart from its productive capacity. It may have beautiful scenery, it may have grottoes and fountains and groves, and well fitted to be the abode of luxury and pride, or adjoin a growing city or town ; but railroads and farms are not generally luxuries, or the offspring or seats of pride, and are only valuable from their power to produce income. They are matters of mere utility, and nothing else. When property is in a condition to develop its full productiveness, it is then only that such productiveness can be relied upon, as exhibiting its real value. If a railroad has only one-half the rolling stock required for its business, its productiveness would be delusive, as a criterion of value. In such a case the assessor would very properly inquire, what would be the value of the property, if fully equipped to do a maximum business, and consider the result of such inquiry in determining its present value. This road is doing its best, and it is proved, it has no net income—no profit on its cost, and is not a good investment at a value greater than that fixed by its owners, and proved on this trial. In process of time it may produce a greater income, when its value for taxation will be fixed proportionably higher. Under the law it must be valued and

assessed every year, and whenever it shall produce twice as great an income as it does at present, it will be valued, of course, twice as high. Then, too, may arise the necessity, if it ever can arise, of determining the other question, whether, in any event, the company are liable to the State for anything beyond seven per cent. of the gross earnings of their road. We decide now only the case before us, as made in the declaration filed by the State, and the pleadings of the parties. We do not wish to be understood as asserting that the productiveness of property when fully improved, is an absolute standard of valuation, but that it forms a very important element in ascertaining its actual value. In connection with this, and possibly of even greater importance in forming a just opinion of real value, would be the inquiry, what would prudent men give for the property, as a permanent investment, with a view to present and future income? Both these elements were taken into the consideration of the witnesses in this case, and weighed with the court in making up its judgment. It is admitted by the auditor that the company has overpaid all that was due from it to the State, on the valuation of their property as established by the testimony. The company makes no claim for the overplus. The judgment of the court is, therefore, in favor of the defendants, that they are not indebted to the State for any portion of the taxes of 1857, but have fully paid and discharged the same.

*Judgment for the Defendant.*