(No. 25944.

THE PEOPLE *ex rel.* John Toman, County Collector, Appellee, *vs.* THE MARINE TRUST COMPANY, Exr., *et al.* Appellants.

*Opinion filed Dec. 16, 1940—Rehearing denied February 12, 1941.*

URION, BISHOP & SLADKEY, and WEST & ECKHART, (HOWARD F. BISHOP, JOHN NEAL CAMPBELL, and ROBERT F. DEWEY, of counsel,) for appellants.

WARREN H. ORR, of counsel, on rehearing.

THOMAS J. COURTNEY, State's Attorney, (MARSHALL V. KEARNEY, JACOB SHAMBERG, and BRENDAN Q. O'BRIEN, of counsel,) for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

Appellants filed objections to judgment for delinquent taxes on two lots owned by them for the years 1931 to 1934, inclusive. The objections for the four years were consolidated, by agreement, and heard as one proceeding. It was charged, in substance, that the assessed valuation was so grossly excessive as to constitute fraud on the part of the assessor, and that this resulted in an unjust discrimination in violation of section 1 of article 9 of the State constitution and the fourteenth amendment to the Federal constitution. The objections were overruled, judgment was entered for the amount of the taxes in controversy, and this appeal followed.

The property is located on North Dearborn street in the city of Chicago, in the district commonly known as "the loop." It consists of two adjoining lots, each 20 by 90 feet, one owned by the heirs of Julia T. Sherman and the other by Mary J. Boyce. The lots are improved with

a twelve-story store and office building which was built in 1894, and is obsolescent. The lots face east and are bounded on the north and west by a 10-foot alley and on the south by two lots improved with a six-story building. The assessor valued the property for the year 1931 at $473,984. The board of review reduced this value by $8596, bringing the assessed value down to $465,388. In 1932, there was a horizontal reduction in values and the property was assessed at $349,042 which was reduced by the board of review to $323,256, by lowering the value of the improvements. In 1933, it was assessed at $332,210, and again reduced by the board of review to $323,256, by lowering the value of the building. For the year 1934, the assessed value of $323,256 was reduced by the board of review to $313,854, the value of the building being again lowered by $9401.

The appellants take the extreme position that the actual value of their property does not exceed $75,500, and that this should be equalized at thirty-seven per cent to give them a taxable value of $27,935. They introduced the testimony of two supposedly expert witnesses who testified that each of the lots would be worth $17,500; that the building was obsolete and a detriment to the property, which it would cost a considerable sum to remove. Evidence was offered tending to show that the building was being operated at a loss and for this various reasons were assigned. It is urged that the ceilings were of excessive height, which, if reduced, would allow an additional floor of rentable space; that the three elevators are not modern, and that two high-speed elevators could do their work; that bay windows prevent economical use of space; that there is no sub-basement; that the style of woodwork is antique, the original mahogany having been painted over, and that the service space occupies too large an area in proportion to the rentable space. The building is and has

been for some time in the hands of a tax receiver and his reports indicate but a very small net earning on the investment. There is no evidence that the property in question was either valued or taxed on any other basis as to earnings, front-foot valuation or square-foot valuation or cubic contents, than other property either adjoining it or in the same neighborhood. In fact, the contrary appears.

On behalf of the People it is proved that all of the loop property, including that here in question, was assessed in accordance with a formula worked out by the assessor's office assisted by a committee of twenty-five real estate experts; that under that formula a front-foot valuation was determined for the value of one foot in the middle of each block, and from that, other values in the same block were determined, applying various factors for depth, size, light, air and alleyways, the trends of business and other influencing factors. It was testified by an assistant assessor that these rules were applied to this property the same as all others in the loop, and that the assessed value of this property was based upon this formula, as considered and determined by the assessor. The parties differ as to the proper application of this formula. Thus, the assessor considered the two adjacent alleys as enhancing factors, whereas the objectors claim they were detrimental. The parties also differ as to the factors concerning size and depth and other matters considered by the assessor.

Appellants insist that because, as they claim, the property was producing no net income, the building could not properly be said to have any value at all, but rather as a detriment to the land, which would cost $15,000 to remove. They insist it was fraudulent on the part of the assessor to have failed to inquire into subsequent private modifications of existing recorded leases in the loop district of Chicago. This argument is based upon evidence that during the recent depression many substantial de-

creases were made in the rents reserved in previously existing leases. The weight of their whole argument is centered upon the question of income, as in fact it must be, because the testimony of their own expert witnesses on cross-examination might be so construed as to give the land in question a value of nearly $150,000, without the twelve-story building.

It would unreasonably prolong this opinion to go in detail into the value of this twelve-story building as shown by the evidence. It is enough to say that the record fails to convince us that it is of no value at all, as claimed by the objectors. It is enough for us to point out that there is a total lack of any evidence that this building is assessed upon any different basis than other like buildings in the same vicinity. The question of its value was a question of fact and that question of fact has been passed upon by the assessor, the board of appeals and the county court of Cook county. This court has no power to fix the valuation of property for taxation and, in the absence of fraud, it is not subject to our supervision. (*Oakridge Cemetery Corp.* v. *Tax Com.* 299 Ill. 430; *People* v. *Millard,* 307 id. 556.) The constitution provides that the ascertainment of the value of property for taxation shall be vested in such persons as are determined by the legislature and prohibits the fixing of such values by any other persons. (*People* v. *Norton,* 358 Ill. 272; *People* v. *Sweitzer,* 339 id. 28.) In the absence of fraud, the courts have no power to review or determine the value of property fixed for the purposes of taxation by the proper officers, and cannot set up their judgment of values as against that of persons to whom the legislature has delegated the duty of determining values. ( *Kinderman* v. *Harding,* 345 Ill. 37.) It is apparent we would have to do violence to these long-established rules if we were to attempt to interfere with the functioning of the duly constituted authority of Cook county in this behalf.

It is contended, however, that the valuation in this case is so gross and excessive as to amount to fraud, in law, if not actually and in fact. Appellants' argument would have greater weight if the position assumed were not so extreme. It appears to us to be bordering on the unreasonable to insist that a twelve-story mahogany-finished building in the loop district of Chicago is not only valueless but a detriment to the land upon which it stands. If this is actually true, it remains a structure of their own selection and maintenance. If their business judgment has been bad in allowing it to continue into a state of obsolesence to their own financial loss, certainly this bad judgment should not impose a penalty upon the property of others similarly situated. Chief reliance is placed by the appellants on the case of *People* v. *Wiggins Ferry Co.* 357 Ill. 173, in which case an assessment was set aside because it was so excessive as to amount to fraud in law. In that case, however, it was apparent the assessors did not exercise their honest judgment, but valued the property at several times the value placed upon exactly similar and adjoining properties. Evidence of discrimination and lack of uniformity was abundant and conclusive. The case of *People* v. *Wilson,* 367 Ill. 494, is also relied upon, but in that case the property was assessed at $43,200, whereas the assessor knew it had been purchased for $15,360 shortly before the assessment was made.

We pointed out in *People* v. *Chicago Union Lime Works Co.* 361 Ill. 304, and in other cases, that the income of property is an element to be considered in fixing its value, but not the sole element, saying: "The value of the property does not depend upon the business astuteness of the owner." In this case we also said: "The law presumes that in fixing the value of the property the taxing authorities have properly discharged their duties and that the tax is just. (*People* v. *Millard,* 307 Ill. 556.) One objecting to the valuation placed upon his property by the

taxing body has the burden of proving, by clear and convincing evidence, a fraudulent over-valuation, (*People* v. *Millard, supra; People* v. *Elmwood Cemetery Co.* 317 Ill. 547;) and it is not sufficient to prove a mere over-valuation, (*People* v. *Norton,* 358 Ill. 272,) but the evidence ·must establish that such excess valuation is the result of some improper, corrupt or illegal motive on the part of the assessing authorities or is so grossly excessive as to create a constructive fraud.—*Sanitary District* v. *Young,* 285 Ill. 351."

The findings of fact upon which this judgment rests are amply supported by the testimony of Thomas J. McGovern, head real estate appraiser of the county assessor's office. His qualifications were that of a real estate broker from 1922 to 1929, an employee of the board of assessors in Cook county for several years, and thereafter appraiser for the county assessor. His valuations on the land were based upon the unit-foot price above mentioned and upon the building on a basis of cubic feet of contents, and the appellants have entirely failed to prove any element of actual fraud or any lack of uniformity which might be construed as constructive fraud. In view of our total lack of authority to determine the proper assessed values and the absence of· proof of fraud, we must decline to interfere with those findings of fact which have been made by the authorities duly constituted for that purpose.

The judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*


Mr. CHIEF JUSTICE GUNN, dissenting.