(No. 31412.—

THE PEOPLE *ex rel.* George E. Johnson, County Collector, Appellee, *vs.* LESLIE J. ROBISON, Appellant.

*Opinion filed May 18, 1950—Rehearing denied September 18, 1950.*

CASSIDY, SLOAN & CRUTCHER, and EUGENE LEITER, both of Peoria, for appellant.

MICHAEL A. SHORE, State's Attorney, of Peoria, (WILLIAM W. DUNN, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellant, Leslie J. Robison, filed objections to the collector's application for judgment for the 1947 taxes on certain real estate in Peoria County. The sole objection to the entry of judgment upon the collector's application was that the assessed valuation of the property was so excessive as to amount to fraud, and was grossly in excess of the valuation fixed upon similar neighboring property. Before filing his objections the appellant paid the entire amount of the taxes assessed against his property amounting to $741.66, but claimed a refund to the extent of 53 per cent because of such overvaluation.

The property consists of a lot 120 feet in width and 168 feet in depth, on South Washington Street in the city of Peoria. The rear of the lot is served by a railroad track on 13 feet of the appellant's property, and is improved with a sheet metal building, and used as a truck loading dock, with a small office, and some garage stalls, with a loading platform thereon, belonging to the tenant.

After the application of the multiplier applying to Peoria County the total value of the property was assessed at $38,830, and the assessed value of the land, alone, fixed at $32,913. It is the assessed valuation of the land to which appellant objects. A hearing was had before the county court of Peoria County, which overruled the objections. The revenue being involved, the appeal comes directly to this court.

Appellant offered two witnesses, who testified that the full value of the real estate was not to exceed $12,000, and the improvements $5000, making a total valuation of $17,000. These witnesses also testified that they were familiar with sales of property along Washington Street from 1944 to 1947, and that the sale price of the property ranged from $58 to $83 per front foot, whereas the assessed value of the real estate of appellant was $274 per front foot.

It appears from the evidence that the property is leased for a period of five years, from January 1, 1947, until December 21, 1951, at a rental of $170 per month. The lease also provides lessee shall have an extension of an additional five years, at a rental to be agreed upon or arbitrated, but in no event to be less than $170 per month. The lease also contains an option, giving the lessee the right to purchase the property at any time during the term of the lease for the sum of $200 per front foot. The appellee offered testimony of real-estate dealers to the effect that the reasonable value of the property was $250 per front foot, without improvements. The appellant made application to the Board of Review for a reduction of the assessment, and procured a reduction of the land value to the extent of $400.

We have thus presented a question of fact as to whether or not the appellant has established that the assessed value upon his land is so excessive as to amount in law to a fraud upon the part of the taxing authorities. The duty of valuing property for taxation purposes is placed in the hands of administrative officers, whose duty it is to assess all property at its fair value and to make all valuations of the same type of property uniform, so that each taxpayer pay his proper share of the tax burden. The statute provides that a taxpayer who is dissatisfied with his assessment may apply to the board of review, and that appears to have been done in this case.

We have had a number of cases before this court in which this same question has been raised, and we have uni-

formly held that the assessed value of property for taxation purposes cannot be impeached merely because of a difference in opinion as to its value as between the assessing officers and a court. (*People ex rel. Hellyer* v. *Hendrickson,* 373 Ill. 99; *People ex rel. Tedrick* v. *Allied Oil Corp.* 388 Ill. 219.) The constitution and the statutes of the State of Illinois charge the taxing officials, and not the owners of property, with the duty of assessing it for taxation purposes. *People ex rel. Toman* v. *Marine Trust Co.* 375 Ill. 488.

We also held, in *People ex rel. Toman* v. *Olympia Fields Country Club,* 374 Ill. 101, that fraud in the overvaluation of property for the purposes of taxation must be proved by clear and sufficient evidence, as the presumption is that the tax is just and that the tax levying officers have performed their duties, and the objector must establish by clear and convincing evidence that fraud has been committed. In *People* v. *The Process Corp.* 377 Ill. 65, we held that proof of overvaluation, alone, will not establish fraud, unless it is so excessive, and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive.

Appellant relies largely upon *People ex rel. Rhodes* v. *Turk,* 391 Ill. 424; *People* v. *Wilson,* 367 Ill. 494; and similar cases. The circumstances under which the court granted relief in these cases can be readily distinguished from those in the instant case. In the *Turk case* the property had been offered for sale for $25,000, and was actually sold for the sum of $25,000, and the assessor, knowing these facts, assessed it at $82,coo, and attempted to justify the assessment by applying some sort of a formula to a building over eighty years old, not fit for any modern use. In the *Wilson case* the facts disclose that the property was acquired by voluntary purchase for the sum of $15,360, and rented at an average of $467 net per year, but was immediately afterwards assessed at $43,200 by an assessor

who had knowledge of the purchase price, as well as the rental income. And in the case of *People ex rel. Wangelin* v. *Wiggins Ferry Co.* 357 Ill. 173, a valuation of about three times the real value was based upon speculation, and upon certain public improvements which were supposed to be constructed in the near future, but which had not as yet actually been commenced. The other cases cited are based upon similar states of fact, which bring them within the rule laid down in the *Process case,* that the overvaluation of property to be fraudulent must be excessive, and made under circumstances such as to justify the conclusion the assessment was not honestly made.

In the instant case, we have a conflict of evidence. It was heard by the county judge. Two witnesses testified to a valuation of a little less than one half of the assessed value, and two witnesses for the People testified to a valuation of about the same as the assessed value. The evidence discloses that the locations of the properties with which comparison is made are not the same, being from one and one-half to six blocks distant; and, also, the topography of the ground of the different lots is not the same as that of the appellant, being considered by some of the experts as being much more favorable for building than some of the other lots with which comparison is made, because of a sharp rise or hill at the rear of the properties. Moreover, the assessed value of the properties immediately adjoining on both sides of the plaintiffs' property is substantially the same.

The rental value must also be taken into consideration. Even with the full amount of the taxes deducted the property shows a net income of approximately $1300 per year, which would show a four per cent return upon a valuation of over $32,000. We are bound to take judicial notice of the fact that in recent years the return from real-estate investments is far less than in former years, and, conse-

quently, such matters must be taken into consideration in arriving at the value of property; and, while it is not evidence of value, the option price of $200 per front foot is a circumstance which the court doubtless took into consideration in determining whether the valuation of the assessor was so excessive as to amount to fraud.

If we could assume that the properties with which that of the appellant is compared were the same in every respect, and the assessed values much lower, there would be more to justify appellant's position, but it is a matter of common knowledge that the value of property, especially in cities, may vary greatly in as little as one block, and in the present instance the distances vary as much as from one and one-half to six blocks; and, as we said in the _Olympia Fields-Country Club case,_ the mere proximity of property is not sufficient to prove disparity in the valuation of land values, as it must be established by the objector that the lands selected for comparison are similar in kind and character and in other matters which make up value.

We find nothing in the record which would indicate that the assessing officers were not acting in good faith, or that any knowledge was brought to their attention of facts and circumstances which would indicate that there was a gross overassessment on the value of the property. Even in the cases relied upon by appellant this is held to be necessary. The duty of assessing property is placed upon the tax officials, and courts are not at liberty to reassess because they may believe there is some inequality, unless the difference is established to be so gross, without basis in law or fact, as to amount to constructive fraud.

We think the evidence was insufficient to justify the court in sustaining the objections of appellant, and the judgment of the county court of Peoria County is accordingly affirmed.

*Judgment affirmed.*