CONSOLIDATION COAL COMPANY, Plaintiff-Appellee, *v.* THE PROPERTY TAX
APPEAL BOARD OF THE DEPARTMENT OF LOCAL GOVERNMENT AFFAIRS
*et al.*, Defendants-Appellants.

(No. 73-223;

Third District—June 25, 1975.

BARRY, J., specially concurring.

William J. Scott, Attorney General, of Chicago, John Morris, of Springfield, and Lachlan Crissey, of Lewistown, (Michael B. Weinstein and Robert G. Epsteen, Assistant Attorneys General, of counsel), for appellants.

Claudon, Elson & Lloyd, of Canton (Chester Claudon, of counsel), for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Fulton County which affirmed the decision of the Property Tax Appeal Board with regard to classification of the Norris Mine preparation plant as well as the level of assessment which was used by the Board in computing the assessed valuation of plaintiff's property, but in which the trial court reversed the determination of the actual values of plaintiff's property made by the Property Tax Appeal Board. The appeal is taken from that portion of the trial court's order which reversed the determination of the actual values of plaintiff's property.

On appeal in this court, the defendants (Property Tax Appeal Board of the Department of Local Government Affairs of the State of Illinois and the Fulton County Board of Review) contend that the finding and

decision of the Property Tax Appeal Board are supported by substantial competent evidence and are not against the manifest weight of the evidence; that the Property Tax Appeal Board used a proper method of evaluation in the instant case; that the figure which the trial court set as the actual value of the preparation plant was erroneous; and that the trial court erred in entering its own valuations as to the property in question.

Plaintiff Consolidation Coal Company (hereinafter called "Consolidation") commenced a strip mining operation at its Norris Mine in the middle of 1969, and moved in substantial heavy equipment and machinery in anticipation of an estimated 1970 output of over 3,000,000 tons of coal. It soon became apparent, however, that the mine would not be that productive. Consolidation was able to mine only 1.8 million tons in 1970. Revised forecasts disclosed that the amount of coal in the mine was much less than originally anticipated.

The Fulton County Board of Review determined the valuation for 1970 tax purposes of plaintiff's property at the mine. Plaintiff then sought to challenge the valuations of 11 pieces of heavy machinery (6 shovels, 3 wheels, and 2 drag lines) and of the coal preparation plant (the plant was classified as realty). Plaintiff appealed from the county valuations to the Property Tax Appeal Board under the provisions of section 111.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1969, ch. 120, § 592.1).

At the hearing before the Tax Appeal Board, plaintiff called five witnesses to establish estimated values of the property involved. These witnesses were the sales director of a power shovel company, the president of a dealer in heavy mining equipment, a self-employed used equipment broker, and two representatives of the American Appraisal Company, professional appraisers. Not all the witnesses testified to values for each item in dispute. The American Appraisal estimates totaled $4,475,000 actual value for all but one of the pieces of machinery and $1,600,000 for the preparation plant. The highest figure estimated for each item by any one of the plaintiff's witnesses would total, as the greatest total valuation for all of the 11 pieces of equipment, the sum of $5,148,000.

The County Board responded with testimony of a witness (Mr. Miller) from the Jacobs Company which had appraised the plant and equipment for the county. The estimates of the Jacobs Company representative, which are now challenged by the plaintiff, were $11,332,780 for the equipment and $2,659,320 for the preparation plant. The Jacobs appraisal for each item was determined by use of a formula in which the original cost of the item was "trended" up to 1970, a so-called current "replacement" cost, and then a factor for depreciation was subtracted to arrive at a value. Plaintiff's witnesses, on the contrary, testified

as to what they estimated they could sell the various items for, although they admitted that for several of the items there would be little, if any, demand. Testimony indicated that most of the equipment was fairly old or obsolete compared to modern mining equipment, and much of it was in disrepair, though still functioning.

The Property Tax Appeal Board in its opinion, distinguished the "As is, Where is" appraisal method of plaintiff's witnesses from the "value in use" concept of the Jacobs appraisal, and held:

"* * * these specific pieces of mining machinery must be appraised for value in use as an integral part of a coal producing operation and, therefore, (the Board) accepts the Jacobs Company, Inc. appraisal as being the only one using the correct appraisal concept."

The Board, therefore, adopted the Jacobs figures for actual value though it did use a lower level of assessment and thus reached a somewhat lower value than imposed by the County Board.

Plaintiff brought an action for review of the Board decision in the Circuit Court of Fulton County under the Administrative Review Act (Ill. Rev. Stat. 1969, ch. 110, §§ 264—279). At the request of both parties for findings of fact by the trial court, the court made a determination as to the values and found that the equipment had an actual cash value of $7,197,070 and accepted the American Appraisal Company figure of $1,600,000 for the preparation plant. The trial court held that the Jacobs Company appraisal was not shown to be related to the statutory basis of fair cash value and that it was error for the Tax Board to rely exclusively on the Jacobs figures.

■■ The parties agree as to the basic principles for judicial review of administrative proceedings. It is agreed that an administrative agency decision is upheld by the courts where it is supported by substantial competent evidence in the record and is reversed only where it is against the manifest weight of the evidence or where such evidence clearly indicates a contrary decision. *Schnulle v. Board of Fire & Police Commissioners,* 16 Ill.App.3d 812, 818, 306 N.E.2d 906 (1974).

There are also well-established rules for the challenge of property valuations for tax purposes. In Illinois, for purposes of property tax, both real and personal property are to be assessed according to "fair cash value." (Ill. Rev. Stat. 1969, ch. 120, §§ 501, 502.) This is generally interpreted to mean "fair market value" or the price that the property would bring at a sale where both parties are willing, ready and able to do business and under no duress to do so. *Springfield Marine Bank v. Property Tax Appeal Board,* 44 Ill.2d 428, 430, 256 N.E.2d 334 (1970);

*People ex rel. Rhodes v. Turk*, 391 Ill. 424, 427, 63 N.E.2d 513 (1945). ██ It is well settled that a mere difference of opinion as to value will not be sufficient to warrant judicial interference in the assessment process. (*Clarendon Associates v. Korzen*, 56 Ill.2d 101, 104, 306 N.E.2d 299 (1973); *People ex rel. Frantz v. M.D.B.K.W., Inc.*, 36 Ill.2d 209, 211, 221 N.E.2d 650 (1966), and cases cited therein.) It has been stated that constructive fraud must be shown though it need not be actual fraud. (*Clarendon Associates v. Korzen*, 56 Ill.2d 101, 104, 306 N.E.2d 299 (1973).) Pursuing this rule, it is apparent that it should be shown that the alleged overvaluation of the property of plaintiff is such as to be constructively fraudulent, so that the Board's approval of the valuation could be considered as being against the manifest weight of the evidence.

Defendants argue that since the trial court refused to say that the Jacobs Company appraisal was wholly wrong, there could be no finding by the trial court that the decision adopting the Jacobs figures was against the manifest weight of the evidence. This contention misapprehends the trial court's decision and reflects a viewpoint which is mistaken, that the Board was required to accept either the Jacobs appraisal or the American appraisal. The trial court is not required to rigidly follow either appraisal. The trial court held that it was against the manifest weight of the evidence for the Property Tax Appeal Board to rely *solely* on the Jacobs estimates to the exclusion of all other testimony.

In the briefs filed in this court as well as in the proceeding before the Property Tax Appeal Board and in the circuit court, the parties seem to view the issue as a battle between two conflicting methods of valuation, *i.e.*, the "market value" doctrine and the "value in use" concept. The Board found that there was insufficient evidence of market values for the equipment, and that a "value in use" appraisal was necessary. It then looked to the Jacobs figures as the only ones based on "value in use." We do not specifically dispute the "value in use" concept, as it is obvious that a machine which is functioning as part of a production process may have little or no value to an outside buyer, while being worth more to the owner as a working piece of equipment. It may be proper in such instances to value the property for tax purposes at the latter level. In the cause before us, however, the testimony of plaintiff's witnesses indicated that there was a market (in several cases restricted) for most of the items in dispute. It also appears from the testimony of Anders, the equipment broker (and defendants appear to agree with this in their reply brief) that a "value in use" estimate could be arrived at by taking a market price and adding to it the other expenses a buyer

would incur in putting the machine in use himself. This extra expense would include dismantling, transportation, and re-erection on the buyer's site.

The Jacobs Company appraisal figures, as explained by the witness Miller, were based on a formulaic "reproduction cost less depreciation" method. Miller admitted that he had not attempted to investigate possible market values for the equipment; that he did not take the necessity of repairs into consideration; and that he had not had a great deal of experience in appraising heavy mining machinery. On the other hand, American Appraisal's experts examined the items thoroughly on the mine site, although plaintiff's other three witnesses had not.

■■ Market values generally are the standard to be used in valuing property for tax purposes. It is true that there are instances where no market value can be determined, or where a market value is not truly reflective of an item's worth. In such situations, valuation methods such as "reproduction cost less depreciation" and "capitalization of income" are helpful. They are not, however, solely determinative of valuation. *People ex rel. Wangelin v. City of St. Louis*, 367 Ill. 57, 69-70, 10 N.E.2d 369 (1937); and *People ex rel. Wangelin v. St. Louis Bridge Co.*, 357 Ill. 245, 252, 191 N.E. 300 (1934).

■■ Elements such as depreciation, obsolescence and lack of marketability are properly considered in valuing property. (*People ex rel. Toman v. Pickard*, 377 Ill. 610, 612-13, 37 N.E.2d 330 (1941).) The age of the property, its life expectancy, its income production capabilities, its condition and location are all factors in valuation. (*People ex rel. Hellyer v. Hendrickson*, 373 Ill. 99, 295 N.E. 507 (1940).) While there is testimony in the record before us as to all these factors, neither the Jacobs appraisal nor plaintiff's witnesses appear to have taken all such factors into consideration. While estimates of plaintiff's witnesses cannot be taken as absolutely correct, we believe it certainly can be said about the Jacobs appraisal, in the language of the court in *People ex rel. Rhodes v. Turk*, 391 Ill. 424, 426 (1945):

> "There is nothing in the record to explain the formula. * * * Also, no consideration is given to the age or type of the building, if reproduced, or the desirability or salability of such a building. The assessor does not pretend to give an independent estimate of fair market value. By his sole reliance upon a formula not explained, and not shown to have any relation to market value, the appellee is in the position of having no proof of value in the record, except what appears upon the assessors's books. If this stood alone, without contradiction, it would be *prima facie* proof of lawful assessment, but when the assessor testified as to how

the value was arrived at, together with appellants' proof, the presumptive effect of the correctness of the assessed valuation is vitiated."

Paraphrasing the *Turk* case, it must be said in the instant case that there is nothing in the record to explain the formula. Also, by the reliance of the assessor upon a formula, not explained, and not shown to have any relation to actual cash value, the assessor is not in a position of having any proof of value in the record. There was testimony that the value was arrived at by arbitrarily taking original cost and, so-called, "trending" it up to 1970 to get what is summarily labeled as "replacement cost." A factor for depreciation is then subtracted. This procedure does not establish "actual cash value," particularly in light of direct testimony relating to actual cash value of the equipment as submitted by plaintiff's evidence.

As previously noted, the court arrived at a figure between those suggested by the parties. In most cases the court either took the market value suggested by plaintiff's witnesses and added freight and erection costs in order to obtain a total "value," or else took the Jacobs figures and deducted additional amounts for needed repairs or further depreciation. On review of the record, it appears that the trial court's figures are more accurate than those suggested by any one appraiser and were arrived at by a method which is proper. Additionally, the court's finding represents a compromise between conflicting valuations, particularly where the Jacobs and the American Appraisal valuations were demonstrated to be partly erroneous. We find that the court was right in rejecting the method used by the Jacobs company which was not shown of record to be a correct method of determining actual cash value.

■■ We, therefore, agree that the trial court properly found that the valuations established by the Property Tax Appeal Board as to the 11 pieces of heavy machinery were erroneous. To the extent, however, that the circuit court decreed that the figures of "fair cash values" of such property as found by the trial court are binding upon the parties, that portion of the judgment should be modified and such portion should provide for a remandment as hereinafter specified.

. The valuation of the preparation plant, however, involves a different question. Both parties used a replacement cost-less depreciation method to arrive at the value for the plant of $2.7 million to $2.8 million. Plaintiff's witnesses, however, testified that an absolescence factor had to be considered and that it would reduce the plant's value for 1970 tax purposes to about $1.6 million. The board refused to apply this obsolescence factor on the ground that it had to do with the coal and not with the plant. The trial court indicated, without persuasive reasons, that it would

adopt the American Appraisal figures of $1.6 million. Defendants contend that the trial court could not reject total reliance on the reproduction cost method for equipment and then adopt it for the plant. This, however, was the only method used by either party. Since the plant is realty there is no error in using a different method of assessment from that used for the personal property. *People ex rel Toman v. Pickard*, 377 Ill. 610, 614 (1941).

The basic question is whether or not the obsolescence factor was properly applied. Mr. Nichols of American Appraisal Company testified that the preparation plant was practically new and in good condition, but because the latest data showed that the mine could not supply nearly as much coal as previously expected, Nichols felt that the obsolescence factor was necessary to arrive at an actual cash value. This would reflect the fact that the plant would necessarily operate at a far lower capacity than the level for which it was constructed. Mr. Miller of the Jacobs Company disputed the use of the obsolescence factor for two reasons: (1) because the problem lay in geological make-up of the mine itself and not with the plant, and (2) because there was no evidence of any coal shortage whatever on April 1, 1970, the date of the assessment (although such evidence was available by the time the actual assessment was made a year later).

The value of realty such as the plant is to be assessed at the assessment date (now January 1 of the tax year and not April 1) and, therefore, subsequent events should have no effect on the value for that particular year. It is clear, contrary to defendant's assertions, that the availability of coal in the mine is a relevant consideration in determining the plant's value, since the plant exists for the sole purpose of processing the coal in the Norris mine. Without any coal, the plant has much less value either to Consolidation or to a prospective buyer. However it is phrased, the "income of property" (*People ex rel. Toman v. Marine Trust Co.*, 375 Ill. 488, 493, 31 N.E.2d 933 (1940)), the return on real estate investment (*People ex rel. Johnson v. Robison*, 406 Ill. 280, 284-5, 94 N.E.2d 151 (1950)), or earning capacity (*Springfield Marine Bank v. Property Tax Appeal Board*, 44 Ill.2d 428, 431 (1970)), are all normally factors which may be considered in determining fair cash value for tax purposes.

In the cause before us, however, the Tax Board determined, on the basis of conflicting evidence, that it would not be proper to apply the obsolescence factor. Testimony indicated that it was not clear until some time in 1970, that the coal supply in the mine was considerably less than expected. Other testimony was that plaintiff's loss in the mine in

1970 may have been caused by factors other than the coal supply. The trial court gave no reason for adopting the American Appraisal estimate (which used the obsolescence factor).

■■ On the basis of the record, therefore, we cannot say that the Tax Board's decision as to the preparation plant was against the manifest weight of the evidence. Accordingly, we reverse the trial court as to the finding of value for the preparation plant and conclude that the Board's valuation for the preparation plant of $2,659,320 should be reinstated. As to the valuation of the 11 items of machinery, it is clear that the trial court correctly found that the valuation by the Property Tax Appeal Board was constructively fraudulent in its over-valuation. It becomes necessary, therefore, that we remand this cause to the Circuit Court of Fulton County with directions to remand this cause to the Property Tax Appeal Board with specific directions to establish an actual cash value for the 11 items of machinery on the basis of the record heretofore made in this cause, and in accordance with the views expressed in this opinion.

■■ The order of the trial court is, therefore, reversed, as to the valuation of the preparation plant, and is affirmed as to the determination that the valuation of the 11 items of machinery were improperly established by the Property Tax Appeal Board. As we have indicated, the portion of the order of the trial court decreeing that its valuations of the 11 items of machinery were binding on the parties, we find to be improper. Such portion of the trial court's order is herewith vacated. It is true that the trial court stated that, on motion of both petitioner and respondent, which was allowed by the trial court, the court stated that it: "* * * makes the following determination as to fair cash value of the items in dispute." We believe, however, that the joint motion of the parties was intended to be made under the provisions of section 12(3) of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, § 275(3)), pursuant to which the trial court is to make findings of fact or to state propositions of law upon which its judgment is based. While we likewise agree that specific valuations made by the trial court, if such valuations had been made by the Property Tax Appeal Board, would have been proper valuations, we believe that orderly procedure requires that this cause be remanded ultimately to the Property Tax Appeal Board for the purpose of establishing fair cash values, on the record which has been made in this case.

For the reasons stated, therefore, we remand this cause with respect to the valuation of the 11 items of machinery to the Circuit Court of Fulton County with directions to further remand this cause to the Prop-

erty Tax Appeal Board with specific directions to proceed to make the valuations as to such items of machinery, on the record as heretofore made, and in accordance with the views expressed in this opinion.

Reversed in part, affirmed in part and remanded in part.

STENGEL, J., concurs.

Mr. JUSTICE BARRY, specially concurring:

In rejecting the valuations of the Board, the circuit court, under the motion pursuant to section 12(3) of the Administrative Review Act (Ill. Rev. Stat., ch. 110, § 275(3)), made findings in respect to the eleven items of personalty substantially as follows:

(1) that the applicable statutory and case law requires that valuations for assessment be made on the basis of fair cash market value;

(2) that evidence adduced against taxpayer from the Jacobs Company, through Mr. Miller, constituted opinions of value based upon a rigidly applied and arbitrary formula wholly unrelated to the condition, situation, obsolescence, inherent usefulness, or marketability of each specific item of equipment and which measured the value of each by its assumed contribution to use in taxpayer's operation by a method of "trending" its original acquisition cost in place (i.e., including transportation and installation costs) to current 1970 dollars and substracting for depreciation on the basis of "effective age" which is always less than calendar age because it arbitrarily assumes constant renovation and replacement to keep the item in operating order and gives no consideration to the actual fact as to functional obsolescence or need of repairs;

(3) that such appraisal testimony of Jacobs Company did not purport to represent "fair cash value" of the property in the classic sense of that phrase in terms of the amount a willing buyer would pay a willing seller;

(4) that where there was considerable evidence in the record from other witnesses, including American Appraisal Company, of opinions of value based upon consideration of factors peculiar and relevant to the specific machinery and equipment in question, and as to "fair market value in the traditional sense," the Property Tax Appeal Board erred in accepting completely and exclusively the opinion testimony of Jacobs Company, Inc., only, and in rejecting consideration of and in giving no weight whatever to all other testimony;

(5) the result is that the valuations found by the Property Tax Appeal Board do not reflect "fair cash value" of the personal property in the traditional sense established by the cases and are contrary to the manifest weight of the evidence and the law. At another place in the memorandum opinion, the circuit court stated that the court does not say that the Jacobs Company testimony was wholly wrong but only that the Board erred in accepting all of it to the exclusion of all other evidence.

In explaining the "value in use" approach applied exclusively by the Property Tax Appeal Board to all items of personalty, Mr. Miller of Jacobs Company testified that the concept does not purport to represent the price a willing buyer would pay a willing seller; it ignores completely all considerations of functional obsolescence or changes in technology, and arbitrarily assumes the value of each piece of equipment to be its original acquisition cost in place (*i.e.*, including any transportation and erection costs), "trended" to current dollars, from which there is then subtracted some arbitrary allowance for "effective age." "Effective age," he explained, is always less than calendar age because it is always assumed, arbitrarily, by this formula, that the equipment has been kept renovated and in full repair "because prudent management would do that," and that no matter how aged, or in what foreign country the item was originally and exclusively made, that parts are readily available so that value would not be adversely affected in that respect,— again "because prudent management in making a determination (albeit, many years ago) to buy a foreign piece of equipment (in Germany, for example, where one of plaintiff's wheels was acquired) would have anticipated the need for parts and made arrangements to get them when and where necessary." The "value in use" approach also excludes consideration of what a comparable machine would sell for on the market, or availability on the market, or resale value, since this is considered always less than value on the site in use, in the pit, erected and operating.

In Illinois, personal property is to be assessed according to "fair cash value" (Ill. Rev. Stat., ch. 120, § 502) which has been interpreted to mean "fair market value," or the price each specific item would bring at a sale where both parties are willing, ready and able to do business and are under no duress to do so. (*People ex rel. Rhodes v. Turk*, 391 Ill. 424, 63 N.E.2d 334 (1945).) In *State of Illinois v. Illinois Central R.R. Co.*, 27 Ill. 64, 68 (1861), however, the supreme court stated of this standard that:

"Where property has a known and determinate value ascertained by commerce in it, as in most kinds of personal property, or

fixed by law as money, there can be no difficulty [in fixing valuation]. But there are many kinds of property, as to which the assessor has no such satisfactory guide. Such is peculiarly the case with railroad property, and other similar property, constructed not only for the profit of the owners, but for the accommodation of the public, under the sanction and by the exercise of the sovereign power of the State. *In such cases*, the inquiry should be, what is the property worth *to be used for the purposes for which it is constructed*, and not for any other purpose to which it might be applied or converted, or for which it might be used. In such cases, if the property is devoted to the use for which it was designed, and is [in fact] in a condition to produce its maximum income, one very important element for ascertaining its present value is discovered, and that is its net profits." (Emphasis added.)

In *People ex rel. Wangelin v. St. Louis Bridge Co.*, 357 Ill. 245, 191 N.E. 300 (1934), the property in question was a privately owned Illinois portion of the Eads bridge across the Mississippi River at East St. Louis. Again in this instance, the supreme court observed that a bridge (like the railroad in the preceding case) is a type of property in a class by itself (*i.e.*, sui generis), in the sense that as a completed structure and unit, there is practically no market by which fair cash value can be ascertained so that testimony as to reproduction costs and earnings could both be considered in determining value. More recently, in *Chicago & North Western Ry. Co. v. Department of Revenue*, 6 Ill.2d 278, 128 N.E.2d 722 (1955), the supreme court said that capitalization of earnings and reproduction costs depreciated are factors which may be considered in determining fair cash value of railroad properties for assessment purposes, but it stated also that such evidence is properly considered *in such cases, not because of its intrinsic reliability, but out of necessity, and that in the case of ordinary property, the income* which a particular owner is able to realize from such property *is not relevant* in determining value for tax assessment purposes. In so holding, it made specific reference to methods of valuation applied in eminent domain proceedings to ascertain market value, citing *Forest Preserve District v. Hahn*, 341 Ill. 599, 173 N.E. 763 (1930). In that case, it was emphasized that "market value" *does not mean value to the owner*, but value on the market for its highest and best use, unless the property is of such special nature and applied to such special use (*i.e.*, is sui generis or unique), that it is shown to have no market value.

As to the latter kinds of unique or special properties, it is said at 72 Am. Jur. 2d *State and Local Taxation* § 756, (1974), that reproduc-

tion costs, while not a final test, are or may be a criteria of present value when allowances are made for depreciation and obsolescence, but that valuation being a quasi-judicial function, the exercise of judgment is required *so that any arbitrary valuation* of property *made without taking into consideration the actual facts and circumstances of each piece of property* (at least where practicable) *is void.* At section 753 of the same volume at page 79, it is stated:

"Actual value has been defined by statute as the value of property in the market in the ordinary course of trade * * *."

And later, in the same place, it is said of real property what also appears true of personal property:

"[It] seems * * * the general practice, * * * where there is no satisfactory evidence of market value, * * * to admit all reasonable evidence throwing light on the true value, including testimony and data to show particular modes of arriving at valuation, and to give such weight to the same as the trier of facts in the exercise of a reasonable discretion finds proper under the circumstances."

In an annotation at 152 A.L.R. 611, 613 (1944), the author in summarizing the cases, writes:

"If property assessed has a market value and there is satisfactory evidence as to what its value is, *other evidence of value may become at best merely corroborative.* But if the property has no market value special means of measuring its true value must of necessity be relied on.

* * * The proposition that a court or referee has discretion as to the mode of arriving at true value apparently means no more than that greatest weight, and sometimes controlling weight, should be given to that mode which under the circumstances of the case appears most reasonable and sound, and that, the question being one of fact, the choice made is not to be overthrown on review, except in case of an abuse of discretion *or a departure from the statutes.*" (Emphasis added.)

I conclude from these authorities that where, because of the special or unique nature of the property, no market exists so that many elements bearing upon value are authorized, out of mere necessity, to be considered, they may nonetheless be used only as aids in arriving at "fair cash value" in the traditional sense contemplated by the statute. That no one of these other authorized approaches to valuation may ever be accorded conclusive validity to the exclusion of other available evidence so as to establish a new and different standard of valuation. I conclude also from these authorities that even in the case of ordinary property for

which evidence of market value may exist, that other approaches to valuation may still be considered as aids in corroboration of "fair cash value," again in the traditional sense contemplated by the statute, but not for the different purpose of creating a new standard of "value in use to the owner."

There was considerable evidence in the record here in respect to all or most of the 11 items of personalty as to the fair cash value of each in the traditional sense, including opinion evidence as to what a willing buyer would pay a willing seller for each, and the specific condition of repair and obsolescence of each. Without passing any judgment as to whether any of it was more or less satisfactory evidence, or the weight that should be given any of it, it must at the same time be noted that the record is devoid of proof that the six shovels, three wheels, and two drag lines are constructed as a composite unit like a bridge, or in any manner sui generis, or special, merely because they are located and operating in plaintiff's pit. Where there was evidence of market value, and nothing unique shown in respect to the items, the Board might properly consider elements of the Jacobs Company's appraisal, such as opinions of reproduction costs, as a means of corroborating the validity of other opinion testimony as to market value, in order to make a considered judgment of true fair cash value according to the statutory standard.

The fact that the circuit court did not find the Jacobs Company's appraisal testimony to be wholly incompetent proof, did not preclude that court, as the Board argues, from validly making the further determination that the Board manifestly erred in adopting Jacobs Company's valuations to the exclusion of all other evidence. The circuit court's determination is legally consistent and correct. The record here shows that the Board did not use the Jacobs Company formula and testimony for purposes of arriving at valuation according to the statutory standard. Instead the record shows that the Board excluded consideration of all evidence of value related to the statutory standard and abandoned inquiry as to value under that standard altogether. It substituted exclusively, in lieu thereof, the entire Jacobs Company formula, which is based on many arbitrary assumptions, to arrive at "value in use to the owner in the pit." For this reason, I agree with the determination of the circuit court and the majority of this court, that the valuations of the Board must be reversed. I agree that the circuit court erred in making its own independent valuations and that the cause must be remanded to the Property Tax Appeal Board to make proper valuations consistent with the law.