(No. 12581.—Judgment affirmed.)

THE PEOPLE *ex rel.* George.E. Little, County Collector, Appellant, *vs.* THE ST. LOUIS ELECTRIC BRIDGE COMPANY, Appellee.

*Opinion filed December 17, 1919.*

1. TAXES—*board of review cannot act arbitrarily in making assessment.* In making an assessment against the tangible property of a bridge company the board of review cannot act arbitrarily and in disregard of the evidence, and if the evidence shows an overvaluation by the board so excessive as to require the conclusion that the board did not exercise honest judgment, objections to a tax based on such excessive valuation will be sustained by the courts.

2. SAME—*an assessment by the State board in violation of its own rules cannot be sustained.* The State Board of Equalization is charged with the duty of assessing the capital stock of corporations and may adopt rules for that purpose to which it must adhere whenever they are applicable, and an assessment of capital stock in violation of its own rules cannot be sustained.

3. SAME—*the State board has nothing to do with valuation of tangible property.* In assessing the capital stock of a corporation the State Board of Equalization has no right to take into consideration the question whether the tangible property of the corporation has been assessed too low or too high by the local assessor.

4. SAME—*duty of State board in making capital stock assessment.* In making a capital stock assessment it is the duty of the State Board of Equalization to ascertain the fair cash value of the shares of stock and the amount of indebtedness of the corporation, except for current expenses, add the two together and equalize the aggregate amount with other property throughout the State, and from the amount so equalized deduct the equalized value of the tangible property of the corporation.

5. SAME—*State board cannot fix value of shares of stock in disregard of the facts.* In finding the value of the shares of stock of a corporation the State Board of Equalization may consider the books of the corporation, the returns made to the Auditor of Public Accounts and such other information as may be obtainable, but it cannot fix such value in disregard of the facts.

APPEAL from the County Court of Madison county; the Hon. OTTO W. LONGENECKER, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, JOSEPH P. STREUBER, State's Attorney, and CLARENCE N. BOORD, for appellant.

BURTON & HAMILTON, and TERRY, GUELTIG & POWELL, for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The St. Louis Electric Bridge Company filed objections in the county court of Madison county in 1917 to the application of the county collector for taxes assessed against its tangible property in 1916, amounting to $11,571.10. In 1918 it filed objections to the application of the collector in that year for judgment for $24,850 taxes extended against its capital stock on an assessment made by the State Board of Equalization in 1917. The two cases were heard together by agreement, judgments were rendered sustaining the objections, and the People have appealed.

The objection in each case was that the assessment was arbitrary and so unreasonable and grossly excessive as to be fraudulent. The appellee's property which was assessed consists of the part in Illinois of a bridge extending across the Mississippi river from Venice, Illinois, to St. Louis, Missouri, including steel trestle, wooden trestle and real estate which was assessed at $10,000. The bridge has been in use since the fall of 1910. In 1913 and 1914 the portion of the bridge in Illinois, with the Illinois real estate, was assessed at a full value of $420,000. In 1915 the assessor raised the full value to $1,050,000, but the board of review, upon a hearing, lowered it to $420,000. In 1916 the board of review, after notice to the appellee and a hearing, fixed the full value of the Illinois part of the bridge and the Illinois real estate at $1,086,000. The appellee paid the taxes due on the amount of the assessment of 1915, and it is the remainder of the taxes to which objection was made.

The part of the bridge in Illinois consists of 1032 feet of steel bridge, 700 feet of steel trestle and 650 feet of

wood trestle,—2382 feet. That in Missouri consists of
1032 feet of steel bridge, 2868 feet of steel trestle and
1440 feet of steel approach,—5340 feet. The original con-
tract price for the construction of the bridge was $4,711,-
000, but changes were made in the plans reducing the cost
to approximately $3,580,000, at which it was carried on
the company's books. This price was paid, $1,000,000 in
stock and the rest in bonds of the company which were
sold for eighty-five cents on the dollar, so that the actual
money which went to the construction of the bridge must
be reduced $387,000, making the actual cost of construc-
tion $3,193,000. Since the Illinois part of the bridge was
somewhat less than one-third of the whole, an assessment
based solely on the cost of construction could not exceed
$1,064,333. The basis of assessment of all property in
Madison county was seventy per cent of the actual value,
which would produce the amount of $745,033 as the as-
sessed full value of the property, disregarding any question
of depreciation or appreciation in value.

In November, 1914, the appellee procured an inventory
and appraisement of the property to be made by two con-
sulting engineers of St. Louis, and evidence was introduced
on the hearing that the reproduction or replacement value
of the bridge at that time was $2,657,112.94. The fact
that the assessment was made as of April 1, 1916, sixteen
months later, when the prices of labor and material had
changed, weakens the force of the evidence but does not
render it incompetent. There was also testimony at the
hearing that at that time (1916) it would not cost to re-
produce the portion of the bridge in Illinois more than
$800,000. If this reproduction value of $2,657,112.94 were
to be taken as the only basis of assessment, the valuation of
the Illinois third of the bridge would be $885,704, which
on a seventy per cent assessment would produce an assessed
full value of $619,992. The assessment exceeded this
amount more than seventy-five per cent.

In 1916 the gross income of the property from all sources was $267,831.50, taxes and expenses of maintenance and organization $85,965.26, leaving a balance of $181,856.24. In all previous years the net income had been less. Capitalizing this amount at six per cent produces $3,030,937, one-third of which ($1,010,312) at seventy per cent would make a valuation of $707,218 for the Illinois portion based only on income.

All of the above facts are proper for consideration in making an assessment but all of them together are not completely inclusive of the matters to be considered. The character of the property is such that it has no market value in the ordinary sense of that term. Testimony of experts was introduced that in their judgment a willing purchaser of the property would not give more than $1,000,000 or $1,250,000 for the property. The bridge was constructed for the use of the Illinois Traction System. It carries double railway tracks and roadways for wagons and pedestrians. It is strong enough for steam railway traffic, but only electric power is used in operating trains over it. In 1916 the Illinois Traction System, the St. Louis Electric Terminal Railway Company, the East St. Louis and Suburban Railway Company and the Alton, Granite City and St. Louis Traction Company used the bridge. The bridge company owns no rolling stock and operates no trains. Its revenues are derived from tolls received from vehicles and pedestrians, from rentals from the St. Louis Electric Terminal Railway Company, which operates a street car service over the bridge from St. Louis to Venice, Madison and Granite City, and from the interurban companies which use the bridge. The bridge company receives forty-nine per cent of the total receipts of the terminal company from its car service, which the evidence shows to be a liberal division in favor of the bridge company. It receives from interurban fares forty per cent of the receipts for out-bound business and twenty per cent for in-bound business with-

out regard to the place of origin or destination, and this is shown to be a favorable division for the bridge company. The bridge is located between the Merchants' bridge on the north and the Eads bridge on the south, which are used by twenty-six steam railway lines. Most of the steam railroad companies operating these lines own stock in those bridges, and among the owners are the large controlling companies. In 1915 the appellee had no railroad connections west of St. Louis, but at the time of the hearing of this case it was shown that it was getting 24 cars out of 4000 or 5000 in trans-Mississippi business. In the latter part of 1916 the St. Louis Free Bridge was opened just south of the Eads bridge, with free service for vehicles and pedestrians and with offers of facilities to steam roads and interurban roads.

This evidence was submitted to the board of review in 1916. It does not seem possible by any reasonable process, in view of the facts before the board, to arrive at the conclusion that the fair cash value of the part of the bridge in Illinois was $1,551,428 or anywhere near that amount, as the board must have done to fix the assessed full value, on the basis at which other property was assessed, at $1,086,000. The board was required to exercise its judgment in the matter, and a mere difference in judgment will not authorize a court to set aside an assessment. Here there was not only an entire absence of proof to sustain the assessment, but the evidence shows an over-valuation so excessive as to require the conclusion that it did not arise from an error in the exercise of honest judgment but was arbitrarily and intentionally made, and from such an assessment the courts will give relief. *Chicago, Burlington and Quincy Railroad Co.* v. *Cole,* 75 Ill. 591; *People's Gas Light and Coke Co.* v. *Stuckart,* 286 id. 164.

In 1917 the State Board of Equalization assessed the appellee's capital stock, including its franchise, at $1,454,485, being one-third of the full equalized value of $4,363,-

455 as fixed by the board. No assessment of capital stock was made in previous years. The assessed value of the tangible property in Illinois and Missouri in that year was $1,104,485, which was deducted from the assessed value of the capital stock and franchise, leaving the sum of $350,000 as the net assessment of the capital stock and franchise. The State Board of Equalization was charged with the duty of assessing the capital stock of corporations and had the power to adopt rules for that purpose, to which it was bound to adhere where they were applicable. An assessment arbitrarily made by the board in violation of its own rules cannot be sustained. (*Calumet and Chicago Canal and Dock Co.* v. *O'Connell,* 265 Ill. 106.) The method of assessment required the fair cash value of the shares of capital stock and the amount of the indebtedness of the corporation, except for current expenses, to be added together and the aggregate amount equalized with other property throughout the State. From the aggregate amount so equalized the equalized value of all tangible property of the corporation was to be deducted and the remainder constituted the assessed value of the capital stock, including the franchise. The State board had nothing to do with the valuation of the tangible property. That was the duty of the local assessors, and the State board had no right, in assessing the capital stock, to take into consideration the question whether the assessment of the tangible property was high or low. (*Calumet and Chicago Canal and Dock Co.* v. *Stuckart,* 275 Ill. 253.) Its duty was only to ascertain the fair cash value of the shares of stock and the amount of the indebtedness and deduct from this sum the valuation made by the local assessor.

A complaint was made to the board in regard to the assessment. In response to a notice appellee's representatives appeared before the capital stock committee of the board and submitted statements showing the facts which have been hereinbefore stated in regard to its capital stock,

its indebtedness, its income, operating expenses and business. The committee made a report to the board and the assessment was made in accordance with the report. The assessment of $4,363,455 was a mere arbitrary determination, which had no basis in fact to rest upon. The indebtedness was $2,592,000. There could be no difference of opinion about that. The par value of the capital stock was $1,000,000. Its aggregate was $3,592,000, one-third of which was $1,197,333. Assuming the fair cash value of the shares of capital stock to be their par value, after deducting the assessed value of the tangible property ($1,104,485) the remainder ($92,848) would be the assessed value of the capital stock instead of $350,000. The board was not required to take the value of the shares of stock at par. It had a right to take into consideration the books of the corporation, the returns made to the Auditor of Public Accounts, and such other information as it might have or be able to obtain. In fact, however, it could not upon the facts have found the value of the stock to be above par. The bridge had been in operation for six years, during which time, though the company had paid the interest on its bonds, its net income, after paying operating expenses, taxes and interest, without any deduction for depreciation, was less than five per cent of its capital. No honest judgment could place the value of such stock at 177, as must have been done to reach an assessment of $4,363,455. As in the case of the tangible property a court will not give relief against an assessment on account of mere difference of opinion, but where it is manifest that the assessment is grossly excessive and is a result of the exercise of the will and not the judgment, relief will be granted.

The evidence in this record sustains the judgment of the county court, and it will be affirmed.

*Judgment affirmed.*