# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

(No. 16256.—Reversed and remanded.)

THE PEOPLE *ex rel.* Patrick J. Carr, County Collector, Appellee, *vs.* W. T. STEWART *et al.* Appellants.

*Opinion filed December 16, 1924.*

1. TAXES—*when assessment of property may be impeached.* An assessment of property for taxation cannot be impeached by any mere difference of opinion between the assessing officers and the court as to the value of the property, but it may be impeached on the ground that the property has been fraudulently assessed at too high a rate.

2. SAME—*valuation may be so excessive as to show fraud.* An over-valuation of property may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive.

3. SAME—*the assessors must exercise judgment.* An assessing body has the right, and it is its duty, to exercise its own judgment in determining values, but it has no right to fix a valuation by its will, alone, without the exercise of judgment.

4. SAME—*what is evidence of the arbitrary action of assessors.* The fact that the board of assessors in the city of Chicago refused to consider recent sales of property in the taxing zone in deter-

mining the frontage value of real estate and stated that it did not consider such sales material is evidence of an intention to fix the value arbitrarily, without the exercise of judgment as to circumstances that ought to have been taken into consideration.

5. SAME—*unfair assessment is not justified because some property owners do not complain.* Where the frontage value of all property in a certain block or taxing zone in the city of Chicago is over-valued by the board of assessors, the fact that only one-sixth of the property owners object does not justify the unfair assessment and is no reason why those who do object should be denied a hearing in court to correct the wrong done to them.

6. SAME—*when future values cannot be made basis of assessment.* In assessing real property for taxation, values which are future in character cannot be taken into consideration where they are so elusive and difficult of ascertainment that they have not affected the present market value of the property, but the assessment is required by statute to be based on the fair cash value of the property at a voluntary sale on the first day of April in the year in which the assessment is made.

7. SAME—*when valuation of property is excessive.* An assessed valuation of property is so excessive as to show that it was arbitrarily made and was not the result of honest judgment where the customary rule adopting sixty per cent for the assessed value was followed in valuing other property while the assessed value complained of is more than the actual value of the property as indicated by the evidence.

APPEAL from the County Court of Cook county; the Hon. EDMUND K. JARECKI, Judge, presiding.

LANDON & HOLT, (ROBERT N. HOLT, of counsel,) for appellants.

ROBERT E. CROWE, State's Attorney, and WILLIAM H. DUVAL, (HAYDEN N. BELL, W. W. DEARMOND, and ROY MASSENA, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The county collector of Cook county, at the July term, 1924, of the county court, applied for judgment and order of sale against certain lands of W. T. Stewart, John E. Colnon and the estate of Emily Satterlee, for unpaid taxes for

the year 1923. The owners filed objections, claiming that the assessments were so grossly in excess of the fair cash market value of the property as to be fraudulent and illegal; that they were unfair and fraudulent in that while other property in the same general locality had been assessed at sixty per cent of its fair cash market value, the objectors' property had been assessed at more than double its fair cash market value, and that the board of review had not exercised its honest judgment in fixing the value but had acted willfully and in disregard of plain facts as to the value of the property. It was stipulated that the People had shown a *prima facie* case. The objectors introduced evidence, none being offered by the People, the court entered judgment against the objectors, and they have appealed.·

The property objected for is all on South Clark street between VanBuren and Harrison streets, in Chicago,—a long block, which would be intersected about its middle by Congress street were that street extended to Clark. The lots north of Congress street extended are more valuable than those south. The lots are in what is known as the "loop district" of Chicago. Their value is greatly affected by the fact that lots in the block are occupied by Chinese business houses and cheap lodging houses. For taxation purposes the assessors made the block a taxing zone. The lots represented in this suit constitute one-sixth of the entire zone. Lots north of Congress street extended were assessed by the board of assessors at $2378 a foot and those south at $1871 a foot. Aaron Colnon, for the appellants, appeared before the board of assessors to object, and was told that that board did not make any changes in loop property and was advised to appear before the board of review. A complaint was filed before the board of review. When the appellants appeared there they were referred to a committee of real estate experts who had been employed to value the down-town property in Chicago and were informed that what that committee did would be confirmed by the board

of review. The appellant Stewart testified in this case that he and Aaron Colnon appeared before the committee the following day, having made an appointment for that purpose, with a statement showing the sales of lots in the block that had been made since the first of the year 1920, which they tried to present to the committee, but the committee decided that such evidence was not material. Colnon testified that they did not get a chance to present anything to the committee, the hearing was very short and the minds of the members of the committee were pre-determined. The committee announced that the assessed value of the lots north of Congress street would be $2250 a front foot and of those south, $1800.

·There had been six sales of property in the taxing zone since the first of the year 1920. The first was on March 9, 1920, of lot 7, next to VanBuren street, for $2000 a front foot, ground value. This was the lot farthest north and the most valuable lot in the zone. The value of the lots decreased in proportion to their distance south of VanBuren street. The assessed value of this lot, which is at street Nos. 410-412, was $2378 a foot; of lots at Nos. 449-457, $2310 a front foot; and of all the lots south of Congress street extended, $1871 a front foot. The buildings are assessed in addition to the ground assessment. The second sale was on August 31, 1920, of a lot south of Congress street at $1200 a front foot. The next was on May 2, 1921, of another lot south of Congress street at about $1200 a front foot also. The next was on July 7, 1921, just south of Congress street extended, at $1200 a front foot also. The next was on May 4, 1922, of lots north of Congress street at $1600 a front foot, and the last was in July, 1924, of a lot south of VanBuren street at $1000 a front foot. Much of the value of the lots was speculative. Their location in the loop district indicated a probable future use for desirable business houses. The use to which they are now devoted does not justify the valuations, indicated by the

sales that have been referred to. Rentals are now low, twenty-one stores, each occupying from 18 to 25 feet front, in the block being rented at an average of $174 a month each. The expert witnesses who testified stated the values of the lots substantially as shown by the sales.

The annual report of the Illinois tax commission for 1923, page 10, on the subject of values, equities and rates, is as follows: "It is to be remembered that under the law, in each instance, every place and part and parcel of property, whether real or personal, including moneys and credits, should be taken at its full fair cash market value by the assessing authorities, and by reason of custom and such general use as to become a rule which every tax-payer is entitled to the benefit of, sixty per cent of such full value thus determined should be taken for the full equalized value to which the tax rate will be applied." That the sixty per cent rate was adopted by the assessing officers with reference to property in the loop is shown by the selling price of fifteen properties in the loop for a total of $21,251,500 while the total assessed value of the same properties was $12,820,000. It cannot be doubted that the lots of the appellants were assessed higher than their fair cash market value. They were assessed at more than their actual values as fixed by sales of property similarly situated and more than their actual value as shown by the evidence, while other properties in the loop district were assessed at approximately sixty per cent, only, of their actual values, as shown by sales. If the sales shown by the evidence and the testimony of the witnesses is to be regarded as establishing the value, then the fair cash market value of the property north of Congress street extended did not exceed $1600 a front foot and that south of Congress street did not exceed $1300 a foot. This would indicate an assessment, at sixty per cent, of $960 and $780, respectively. The assessments made were $2250 and $1871, indicating a full value of $3750 and $3100, respectively.

It has been often held that an assessment of property for taxation cannot be impeached by any mere difference of opinion as to the value of the property between the assessing officers and the court but only in case the same has been fraudulently made. It has also been frequently held that an over-valuation may be so excessive and made under such circumstances as to justify the conclusion that it was not honestly made and was known to be excessive. (*Keokuk and Hamilton Bridge Co.* v. *People,* 161 Ill. 514; *First Nat. Bank of Urbana* v. *Holmes,* 246 id. 362; *People's Gas Light Co.* v. *Stuckart,* 286 id. 164.) An assessment may be impeached on the ground that property has been fraudulently assessed at too high a rate. In *Pacific Hotel Co.* v. *Lieb,* 83 Ill. 602, it is said: "Where, however, the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation,—must reasonably have known that it was excessive,—it is accepted as evidence of a fraud upon his part against the tax-payer, and the court will interpose." The valuation of the appellants' lots for taxation, according to the evidence in the record, is about 150 per cent of their actual value. All other property was assessed at sixty per cent of its actual value, so that the discrimination against the appellants' property on this basis was really two and a half to one, instead of one and a half to one. An assessing body has the right, and it is its duty, to exercise its own judgment in determining values, but it has no right to fix a valuation by its will, alone, without the exercise of judgment. Even if this over-valuation, great as it is, might not, alone, be evidence of fraud sufficient to impeach the assessment, the other circumstances appearing in evidence, that the board refused to consider sales of property in determining the value and stated that it did not consider them material in the case, is evidence of an intention to fix the value arbitrarily, without the exercise of judgment as to circumstances that ought to have been taken into consideration.

It is argued in the appellee's brief that the assessments complained of are zone assessments, that everybody else in the zone was assessed on the same basis, and that five-sixths of the owners appear to be satisfied with them. The fact that only one-sixth of the property owners object to unfair assessment is no reason why they should be denied a hearing in court to correct the wrong done to them.

It is also argued that the values connected with the assessments in this block are of a type most elusive and difficult of ascertainment; that they are due almost entirely to proximity to the loop district of Chicago and they are almost entirely future in character. The assessment is required by the statute to be at the fair cash value of the property at a voluntary sale on the first day of April in the year in which the assessment is made. Values which are future in character cannot be taken into consideration where they are so elusive and difficult of ascertainment that they have not affected the present market value of the property. Here there was not only an entire absence of proof to sustain the assessment, but the evidence shows an overvaluation so excessive as, taken in connection with the other circumstances in the case, requires the conclusion that it did not arise from error in the exercise of honest judgment but was arbitrarily and intentionally made. From such an assessment the courts will give relief. *Chicago, Burlington and Quincy Railroad Co.* v. *Cole,* 75 Ill. 591; *People's Gas Light Co.* v. *Stuckart, supra; People* v. *St. Louis Bridge Co.* 290 Ill. 307.

The judgment of the county court will be reversed and the cause remanded to that court, with directions to sustain the objections. *Reversed and remanded, with directions.*