(No. 33855-6 Cons.—  )

THE PEOPLE *ex rel.* Herbert C. Paschen, County Collector, Appellant, *vs.* MORRISON HOTEL CORPORATION, Appellee.

*Opinion filed September 25, 1956.*

JOHN GUTKNECHT, State's Attorney, of Chicago, (GORDON B. NASH, CHARLES D. SNEWIND, EDWARD E. PLUSDRAK, WILLIAM S. WHITE, and FRANCIS X. RILEY, of counsel,) for appellant.

JOHNSTON, THOMPSON, RAYMOND, MAYER & JENNER, of Chicago, (HENRY J. BRANDT, ALBERT E. JENNER, JR., and HOWARD E. KANE, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from two judgments of the county court of Cook County, which ordered refunds to the Morrison Hotel Corporation of a part of its real estate taxes for the years 1951 and 1952, based on a finding that its assessments for those years were "excessive, discriminatory, amounting to fraud." Identical questions being presented, the causes were consolidated. Since revenue is involved, the appeal comes directly to this court.

The hotel corporation, owner of the Morrison Hotel located in the Chicago loop area, paid its 1951 and 1952 real estate taxes in full under protest, and after unsuccessfully pursuing its statutory remedy with the Cook County board of tax appeals, filed extensive objections to the collector's applications for judgment. However, the only objection pressed and at issue on this appeal is a so-called "specific valuation objection" which charges that the county assessor valued and assessed the property contrary to his own established rule, resulting in an over-valuation and a fraudulent assessment.

To support its position, the objector relies upon the testimony of the chief deputy assessor in Cook County, who appeared as a representative of the assessor in response to an order of the court.

The deputy assessor first described the general procedures which make up what he called the "assessor's formula." Briefly stated, the following four steps are involved: First, the assessor inspects and measures the premises for the purpose of "cubing" the building. Second, a unit price is applied, said unit price multipled by the cube producing what is referred to as the "new cost of the

structure." Third, the age of the building is ascertained and a proper depreciation allowed. Finally, this value so arrived at may be "tempered" with an "economic analysis" which considers the net income derived from the property. In elaborating upon the last point, the witness said: "In assessing hotel buildings, an independent survey of net income is made by my office when the question is brought to our attention; we then request the owner to submit that information. Our office then makes its own independent survey." These procedures are embodied in the assessor's own rules and regulations.

The objector's sole challenge relates to the fourth step, no contention being made that the others were not correctly done. Its argument centers on the matter of room occupancy, a factor sometimes used in determining net income. It appears that in making the 1951 and 1952 assessments, the assessor assumed that occupancy in loop hotels averaged between 90 and 100 per cent. But he learned later, after these assessments were completed, that this assumption was erroneous. Information supplied by the Chicago Hotel Association showed a 74.84 per cent general occupancy figure in 1951 and 72.64 per cent in 1952; and an audit of the Morrison Hotel Corporation for the fiscal year ending August 31, 1953, disclosed a 60.19 per cent occupancy for its hotel. Thereafter, the assessor made an "adjusted occupancy" of 73 per cent for use in arriving at the objector's 1953 assessment, the deputy assessor saying "it is a uniform method of always stabilizing occupancy at an average condition within a certain group of buildings."

There is nothing in the record to show that the objector ever requested the assessor to consider its net income in arriving at the 1951 and 1952 assessments, and there is no showing that the method used in making these assessments differed from that employed in assessing other loop hotel properties. And even at the trial below, the objector's

room occupancy during 1951 and 1952 was not disclosed, nor was its net income for those years brought out.

On this record, we do not believe the objector is entitled to prevail.

No actual fraud was alleged, nor was it charged that the assessments were so excessive as to be constructively fraudulent. Indeed, no attempt was made to prove the actual market value of the property (or of any similar properties), nor were the 1951 and 1952 net income figures disclosed so as to permit of a capitalization process. Rather, the objector is content to rest its case on the assessor's allegedly deliberate violation of his rules, coupled with a charge of discrimination. (Cf. *Calumet and Chicago Canal and Dock Co.* v. *O'Connell,* 265 Ill. 106, 110.) In short, it charges discriminatory treatment by reason of an arbitrary refusal to "temper" each assessment by an "economic analysis" which considers a room occupancy figure of less than 90 to 100 per cent.

It is fundamental that the objector has the burden of establishing a right to judicial relief by clear and convincing evidence, the tax being presumed valid. (*People ex rel. Johnson* v. *Robison,* 406 Ill. 280; *People ex rel. Schlaeger* v. *Allyn,* 393 Ill. 154; *Jeffrey Apartment Building Corp.* v. *Harding,* 347 Ill. 336.) Here, there is no proof that the assessor knowingly departed from any of the rules of his office governing assessment procedure. The objector at no time asked that its net income be taken into account in placing a valuation on the property, nor did it tender to the assessor any information bearing on its income for the years in question. It did not come to the latter's attention that the occupancy rate which had been used for years in valuing loop hotels might be erroneous until after the instant assessments were completed. What effect room occupancy would have in an "economic analysis" would depend, of course, upon the method used in ascertaining net income. But so far as this record discloses, the identical figure was

used for all loop hotels, the burden of any error fell equally upon all in the same class, and there was no discrimination. There is no hint of fraud or lack of good faith in any of the assessor's actions or any evidence of arbitrary conduct on his part. The worst that can be said is that he made an honest mistake or error of judgment. "If property has been assessed higher than it should have been through a mere error of judgment on the part of the officers making the valuation, the courts are powerless to rectify the error * * *." (*People ex rel. Schmulbach* v. *City of St. Louis,* 408 Ill. 491, 500.) Our constitution provides that the assessment function is to be exercised "by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise." (Ill. Const., art. IX, sec. 1.) By implication, courts may not intervene to nullify or modify an assessment where the duly authorized officials have exercised honest judgment and there is nothing to establish fraud (either actual or constructive) or illegal conduct on their part. See, generally, Cushman, "The Judicial Review of Valuation in Illinois Property Tax Cases," 35 Ill. L. Rev. 689.

The objectors having failed to establish the invalidity of the assessments, refunds should not have been ordered. Accordingly, the judgments of the county court of Cook County are reversed, and the cause is remanded with directions to proceed in due course.

*Reversed and remanded, with directions.*