(No. 42226.—

THE PEOPLE *ex rel.* Corbin B. Munson, County Collector, Appellee, *vs.* MORNINGSIDE HEIGHTS, INC., Appellant.

*Opinion filed May 20, 1970.*

Nielsen, Sumberg and Spelman, of Rockford, (Alan G. Sumberg, of counsel,) for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (William G. Gates, Assistant State's Attorney, of counsel,) for appellee.

Mr. Justice Ward delivered the opinion of the court:

The county collector of Winnebago County applied to the circuit court of that county for judgment for delinquent 1966 real-estate taxes which had been paid under protest by Morningside Heights, Inc. Objections were filed by the taxpayer alleging that its property had been so excessively overvalued as to constitute constructive fraud. After a hearing, the circuit court of Winnebago County dismissed the objections and entered judgment for the full amount of the tax. Since the revenue is involved, the taxpayer has appealed directly to this court. Ill. Rev. Stat. 1969, ch. 110A, par. 302(a).

The real estate concerned consists of a 75-80 year old building, housing apartments and a store. It was described as being in a poor state of repair. Initially it had been given a 1966 assessed valuation of $39,000, but the valuation was

later reduced to $36,000 by the board of review of Winnebago County. In the year in question, 1966, real property in the county was assessed at a rate not to exceed 55% of its fair cash market value. Using this prescription, it would appear that the taxing authorities had determined that the fair cash value of the taxpayer's property was about $65,000.

At the hearing, evidence was presented by the taxpayer that the property, after having been for sale on the open market for two years, had been sold in 1966 to Land Rock Builders, Inc. There was no evidence what the asking price or prices had been during this period but the purchase price to be paid by Land Rock Builders, Inc. was $38,500. This was to be paid by the assumption by the buyer of the balance due in this amount on an outstanding mortgage on the property. It appears that the mortgage had been given in 1959 for $63,000. The president of Land Rock Builders, Inc., the present owner of the property, and the real estate broker who negotiated the sale testified that in their opinions $38,500 represented the fair cash market value of the property. Considering the assessment rate of 55% of fair cash market value, the taxpayer contends that the property should have been assessed at about $21,000. It offers again its argument that the assessment of $36,000 as set by the board of review was so grossly excessive as to amount to constructive fraud.

It is clear that courts, because of the separation of powers, in the absence of a showing of actual or constructive fraud, have no power to review, with a view to altering, the valuation of property which has been fixed for purposes of taxation by appropriate administrative officers. (*People ex rel. Joseph* v. *Schoenborn,* 41 Ill.2d 302; *People ex rel. Nordlund* v. *Lans,* 31 Ill.2d 477.) What must be shown by a taxpayer to demonstrate constructive fraud was recently and concisely described by this court in *People ex rel. Frantz* v. *M.D.B.K.W., Inc.,* 36 Ill.2d 209, 211. We observed:

"The law requires assessment of property at its fair

market value. The ascertainment of such value for purposes of taxation is primarily for the administrative officers to whom this function is delegated, and except for cases of fraud, courts will not undertake to review the determination. When valuation has been fraudulently made it is subject to judicial review, but more is required for this purpose than merely showing an overvaluation. It is only where the property has been grossly overvalued, the assessed valuation being reached under circumstances showing either lack of knowledge of known values or a deliberate fixing of values contrary to the known value, that fraud in law will be inferred. Before the conduct of the taxing authorities will be considered constructive fraud, the evidence must clearly establish that the assessment was made in ignorance of the value of the property, or on a judgment not based upon readily ascertainable facts, or on a designedly excessive basis. *People ex rel. Nordlund* v. *Lans,* 31 Ill.2d 477; *People ex rel. Callahan* v. *Gulf, Mobile and Ohio Railroad Co.,* 8 Ill.2d 66; *People ex rel. Rhodes* v. *Turk,* 391 Ill. 424."

Presuming the balance of the mortgage assumed to have been the fair market value, the testimony given by the present owner's president and the sales broker pointed to an overvaluation. But, as just observed, overvaluation itself is not enough to show constructive fraud. The taxpayer produced no evidence which would indicate that the assessment was reached either through an ignorance of known values or through a deliberate setting of assessment contrary to the known value. Also, there was no showing that the assessor and board of review were not actuated by good faith or that the assessment was not made in the exercise of an honest, if erroneous, judgment. Since the objecting taxpayer has the burden of proving fraud by clear and sufficient evidence (*People ex rel. Paschen* v. *Morrison Hotel,* 9 Ill.2d 187, 190), under these circumstances the presumption that the tax is just and that the assessing officers have honestly performed their duties must stand. *People ex rel. Nordlund*

v. *S.B.A. Co.*, 34 Ill.2d 373, 377; *People ex rel. Paschen* v. *Morrison Hotel*, 9 Ill.2d 187, 190.

The taxpayer, citing *People ex rel. Rhodes* v. *Turk*, 391 Ill. 424, argues that evidence as to the price paid in a recent sale of the property is "nearly" conclusive of its fair market value, if the sale was a voluntary, arms-length transaction. Such evidence, although relevant to the question of the fair market value of the property (see *People ex rel. McGaughey* v. *Wilson*, 367 Ill. 494), does not by itself establish constructive fraud through the failure of the assessor's valuation to correspond with it. The taxpayer's burden is larger than this. (See *People ex rel. Frantz* v. *M.D.B.K.W., Inc.*, 36 Ill.2d 209.) Too, the facts in *Turk* were quite different from those here. There the assessor testified in behalf of the county collector but the testimony demonstrated that his assessment had not been properly determined. The assessor in *Turk* assisted the objector in proving "his right to judicial relief by clear and convincing evidence." *People ex rel. Paschen* v. *Hendrickson Pontiac, Inc.*, 12 Ill.2d 477.

For the given reasons, the judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*