120 Ill. App.3d 369 (1983)
458 N.E.2d 121
In re APPLICATION OF EDWARD J. ROSEWELL, Cook County Treasurer and Ex Officio County Collector (The People ex rel. Edward J. Rosewell, Cook County Treasurer and Ex Officio County Collector, Relator-Appellee,
v.
2626 Lakeview Limited Partnership et al., Objectors-Appellants).
No. 82-2835.
Illinois Appellate Court  First District (3rd Division).
Opinion filed December 14, 1983.
Kevin M. O'Keefe and Thomas G. Lyons, both of O'Keefe, Ashenden, Lyons & Ward, of Chicago, for appellants.
Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey and Thomas J. McNulty, Assistant State's Attorneys, of counsel), for appellee.
Judgment affirmed.
*370 JUSTICE O'CONNOR delivered the opinion of the court:
This appeal involves two consolidated specific objections to the Cook County collector's application for judgment determining the correct amount of taxes paid under protest for the 1976 tax year. The objectors, appellants, herein, Harbor House Condominium Association and 2626 Lakeview Limited Partnership, question the Quadrennial Reassessment of two high-rise apartment buildings in Lake View Township in the city of Chicago. The objectors claim that the properties involved, which were converted to condominium usage during the 1976 tax year, were incorrectly classified and valued for tax purposes as high use residential buildings. The trial court overruled the objections and entered judgment for the collector. We affirm.
The record reveals the following facts with regard to the subject properties: On January 1, 1976, the Harbor House property was improved with a 278-unit rental residential apartment building. The owners of said property entered into a contract to sell the real estate to American Invsco (Invsco) on February 12, 1976, for a consideration of $9,298,570. Closing and conveyance of title occurred on February 29, 1976, and condominium declarations were filed and recorded on May 11, 1976. Initial unit sales began closing on March 11, 1976, and by June 30 of that year 64.4% of all the units had been sold. The total initial sales price of all units amounted to $13,174,720.
On January 1, 1976, the 2626 Lakeview property was improved with a 487-unit apartment building. Invsco contracted to purchase the property on June 17, 1976, for $13,500,000, and closing occurred on August 11, 1976. As with the Harbor House property, the conversion process began immediately, the condominium declarations being filed and recorded on October 13, 1976. By December 23, 1976, 26% of all units had been sold, the initial sales price of all units amounting to $22,570,694.
On November 30, 1976, after the filing of the condominium declaration and the closing of some unit sales, the Cook County assessor for 1976 issued a "Preliminary Notice of Assessed Valuation" against the Lakeview building, stating his intent to increase the assessment from $3,230,599 to $5,096,720. Similarly a notice relating to the Harbor House property was sent on February 8, 1977, stating the assessor's intention to increase the assessments on that property from $2,412,124 to $3,359,606. Complaints were filed in the assessor's office contesting the 1976 assessments of both properties, accompanied by the following evidence: income and expense statements for the properties, the sales price paid by Invsco for the properties, retail sales prices of the condominium units, the condominium declarations, *371 and the rental residential values of the properties. The complaints sought an evaluation of the properties based on 33% of the sales price paid by Invsco.
Amended complaints were subsequently filed with the assessor's office, requesting that the property either be classified as a residential condominium and assessed at 17% of the condominium retail sales price, or as rental residential containing seven or more units and assessed at 33% of the rental residential value. Hearings were conducted by the assessor's office, after which both properties were classified as rental residential with an assessment ratio of 33% of the acquisition price paid by Invsco. The final assessments were $3,069,922 on Harbor House and $4,457,515 on 2626 Lakeview. Complaints for both buildings were filed with the Board of Appeals of Cook County, which ultimately sustained the assessments. The 1976 taxes were timely paid under protest, as required by statute. Specific objections to the 1976 assessments were filed, contesting both the classification of the property as rental residential and the use of the acquisition cost as the basis for the assessment.
The Cook County Classification Ordinance for 1976 (Ordinance), classifies properties for taxation purposes in terms of use. The Ordinance defines Class 2 properties to include real estate used for residential purposes when improved with an apartment building of not more than six living units, or residential condominiums, and provides that such properties will be assessed at 17% of market value. Class 3 properties are defined as all improved residential properties not included in Class 2, and are to be assessed at 33% of market value. (Cook County Ordinance 77-0-12 (1976).) The Ordinance makes no reference as to the time when such use is to be ascertained, however, nor does it provide any basis for changing the status of a property once determined as of the statutory lien date on January 1. The trial court was therefore faced with the question of how a property should be assessed with respect to its classification and its value when it has been converted from rental residential to condominium use after the lien date. The court heard the following testimony at trial with regard to the subject properties:
John Moody, a real estate appraiser and assessment analyst with the county assessor's office until 1976, testified that in reviewing the assessment of a high-rise residential property, the policy of the assessor was to review the income and expense statements supplied by the taxpayer which were then compared with research data supplied by the assessor's own research and standards department. If the taxpayer's data fell within the established range, the net income derived *372 from the statements would be capitalized. This was essentially the income approach to value, which Moody believed to be the best indication of a property's value when that property is residential rental. Moody also testified that in addition to the income approach, the assessor would consider two other approaches to value, a cost approach and a market data approach, and that in so doing, sales of subject properties which had taken place after the assessment date would be considered, with the sale value relating back to the assessment date. Moody testified that many of the high-rise residential buildings in the area were converting to condominiums during 1974 through 1976. He also testified that a condominium developer would normally pay more for a building than its income stream value.
Patrick Doody, who was deputy assessor during the assessment period in question, also testified. Doody classified both of the subject properties as rental residential, and stated that he considered the sale of the properties to Invsco to represent their market value. When questioned as to whether it was the policy of the assessor's office in arriving at the value of residential real estate to apply the income approach, Doody stated that it would vary from property to property, depending on the other information available to the assessor at that time, and that if the property in question had not been sold, its market value would have been arrived at through a combination of all three approaches to value. Doody testified that the subject property had three values during the year in question, relating to its use as either rental residential for the production of income, condominium conversion property, or condominium units. He stated that in determining value, the assessor would and did look to facts occurring after January 1 during a given year.
Lastly, the court heard testimony from Fred Demetros, an employee of Invsco who was involved in the acquisition of the subject properties. Demetros confirmed the fact that there is a different market value for rental residential properties which are purchased with the idea of conversion, and that Invsco had in fact purchased the subject properties for that purpose. Demetros stated that the acquisitions of both of the subject properties were free and voluntary market transactions.
Objectors first argue that the trial court erred in classifying the subject property as Class 3 residential where it was converted to condominium use after the lien date but prior to reassessment. Objectors also claim that where a property has different values depending upon its use, the assessor must use that value which relates to the property's classification under the Ordinance, and that allowing the assessor *373 selectively to rely on certain post-January 1 facts (the sale to Invsco) while ignoring others (the filings of the condominium declarations) in determining value constituted error. Finally, they argue that the actions of the assessor violate the constitutional requirement of uniformity in assessments.
 1 Relying on applicable provisions of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 482 et seq.), the trial court initially determined that, unless otherwise provided by law, a property's status for purposes of taxation is to be determined as of January 1 of each year. We agree. Section 27a of the Revenue Act of 1939 applies to status, and provides that the owner of real property on January 1 shall be liable for the taxes of that year. (Ill. Rev. Stat. 1981, ch. 120, par. 508a.) The General Assembly has thus far provided to change applications of the January 1 date in only two circumstances, amending section 27a to permit partial exemption of taxation where a property becomes taxable or exempt after January 1, and providing for proportionate assessments in the case of new construction or uninhabitable property. (See section 27a of the Revenue Act of 1939 as amended by 1963 Ill. Laws 1591, sec. 1 and Public Act 78-376, sec. 5 (1973 Ill. Laws 1187) (Ill. Rev. Stat. 1981, ch. 120, par. 508a).) With these two exceptions, the Revenue Act does not provide for a change in the assessable status of property after the lien date (see Doran v. Cullerton (1972), 51 Ill.2d 553, 283 N.E.2d 865; People ex rel. McCullough v. Deutsche Gemeinde (1911), 249 Ill. 132, 94 N.E. 162), and objectors have set forth no compelling reasons for this court to implement by judicial fiat that which is properly a function of the legislature.
The trial court then turned to the question of value. Illinois law requires that all real property shall be valued at its fair cash value, estimated at the price it would bring at a fair voluntary sale. The County Ordinance provides an identical definition for "market value." (Real Property Assessment Classification Ordinance, sec. 1(b)(2).) Fair cash or market value has been further defined as the amount that the property would bring at a voluntary sale where the owner is ready, willing and able to sell but not compelled to do so and the buyer is likewise ready, willing and able to buy, but not forced to do so. (Springfield Marine Bank v. Property Tax Appeal Board (1970), 44 Ill.2d 428, 430, 256 N.E.2d 334; People ex rel. McGaughey v. Wilson (1937), 367 Ill. 494, 496, 12 N.E.2d 5.) Thus the standard of valuation is theoretically an objective one, the value of any particular property being set by the forces of the marketplace at a given place and time. It is also well settled that in order to obtain relief on this issue, the objector must show by clear and convincing evidence that the assessor's *374 opinion of fair market value is constructively fraudulent (Clarendon Associates v. Korzen (1973), 56 Ill.2d 101, 105, 306 N.E. 2d 299; People ex rel. Munson v. Morningside Heights, Inc. (1970), 45 Ill.2d 338, 341, 259 N.E.2d 27). Fraud in law will be inferred only where the evidence shows the property to have been grossly overvalued, the assessed valuation being reached under circumstances showing either lack of knowledge of known values or a deliberate fixing of values contrary to the known value. Only where the evidence clearly establishes that an assessment was made in ignorance of the subject property's value, on a judgment not based upon readily ascertainable facts, or on a designedly excessive basis will a finding of constructive fraud against the taxing authorities be entered. People ex rel. Munson v. Morningside Heights, Inc. (1970), 45 Ill.2d 338, 341; People ex rel. Nordlund v. Lans (1964), 31 Ill.2d 477, 479, 202 N.E.2d 543.
 2 Objectors do not challenge the assessor's valuation of the subject properties as being constructively fraudulent in the sense that the sale to Invsco was not at fair market value, but rather, they seek a determination of value consistent with the properties' classification. They conclude that if classification is to be determined as of January 1 then events occurring after that date can have no relevance to the factual determination of value. Having examined the record, we find no factual support for such a conclusion, nor do we find case law to indicate the result urged here.
Objectors rely principally on Consolidation Coal Co. v. Property Tax Appeal Board (1975), 29 Ill. App.3d 465, 331 N.E.2d 122, a case involving the evaluation of a coal preparation plant, in which the court stated generally that events subsequent to the lien date should have no effect on the value for assessment purposes for the year in question. That case did not involve a sale, however, and is, we believe, factually inapposite to the case now before us. In arriving at a valuation for the plant, both parties there had used a replacement-cost-less-depreciation method, but plaintiff's appraisal included an obsolescence factor which considerably reduced the plant's value for tax purposes. The question before the appellate court was whether the obsolescence factor had been properly applied. Plaintiff's witness testified that while the plant itself was practically new and in good condition, recently obtained data showing that the mine could not supply nearly as much coal as previously expected made the obsolescence factor necessary to arrive at an actual cash value. This would reflect the fact that the plant would be operating at a far lower capacity than the level for which it was constructed. Defendant's witness disputed the obsolescence factor, in part because there was no evidence of any coal shortage *375 whatever on the lien date. While it recognized that the availability of coal was a relevant consideration in determining the plant's value, the court reversed the trial court and upheld the Tax Board's determination which rejected the obsolescence factor. Most significantly, the conflicting testimony before the Tax Board had indicated that it was not clear until sometime after the lien date that the coal supply in the mine was considerably less than expected. Other testimony was that the plaintiff's loss in the mine during the year in question may have been caused by factors other than the coal supply. Based on the record before it, and because the trial court had given no reason for adopting plaintiff's estimate which included the obsolescence factor, the appellate court could not say that the Tax Board's decision had been against the manifest weight of the evidence. 29 Ill. App.3d 465, 473.
Our supreme court has at least indicated that a sale of property during the tax year in question is a "relevant factor" in considering the validity of an assessment. (People ex rel. Munson v. Morningside Heights, Inc. (1970), 45 Ill.2d 338, 342; People ex rel. Carr v. Stewart (1924), 315 Ill. 25, 145 N.E. 600.) Values which are future in character may not be taken into consideration, however, where they are so elusive and difficult of ascertainment that they have not affected the present market value of the property. 315 Ill. 25, 31.) With these considerations in mind, the trial court in the instant case held that the assessing officials were not barred, as a matter of law, from considering events which occurred after the lien date in assessing the subject properties. The court went on to state that what subsequent events assessing officials may consider in any individual case will depend on the nature of the event and the weight to be given the event will depend upon its reliability in tending to show value as of January 1. Based upon all of the evidence before it, the trial court determined that the subject properties were both available for use as condominiums and adaptable for that use as of the lien date. The court then upheld the assessments based upon 33% of Invsco's acquisition costs, the evidence of which was properly before the assessor at the time of valuation. We cannot say that this determination was against the manifest weight of the evidence.
 3 Lastly, we find no support for objectors' argument that the subject assessments violate the constitutional requirement of uniformity. Both former employees of the assessor's office testified that all three approaches to value (cost, income and market) were used by the assessor in valuing high-rise apartment buildings, depending in part upon the information which was available at the time of the assessment. *376 The trial court correctly concluded that where, as here, the evidence indicated that the sales involved were free and voluntary market transactions, the market approach yielded a fair and proper method of valuation. Objectors have failed to set forth any evidence that similarly situated property was treated any differently.
Based on the foregoing, the judgment of the circuit court is affirmed.
Affirmed.
McNAMARA, P.J., and WHITE, J., concur.