(No. 66709.—

*In re* APPLICATION OF THE COUNTY TREASURER and *Ex Officio* County Collector of Cook County (County Collector of Cook County, Appellee, v. Ford Motor Company, Appellant).

*Opinion filed September 27, 1989.—Rehearing denied December 4, 1989.*

Rock, Fusco & Reynolds and Tully & Weinstein, both of Chicago (Philip J. Rock, Thomas M. Tully, Donald A. McCarthy and Patrick T. Driscoll, Jr., of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mark R. Davis and Donald M. Devlin, of counsel), for appellee.

JUSTICE MILLER delivered the opinion of the court:

Ford Motor Company (Ford) filed in the circuit court of Cook County an objection to an application of the Cook County collector (Collector) for judgment for delinquent 1981 real estate taxes. Following a bench trial, the circuit court found in favor of Ford, concluding that the Collector's assessed valuation of Ford's property was so excessive as to be constructively fraudulent and therefore invalid. The trial court then ordered the Collector to refund excess taxes that Ford had paid under protest. The Collector appealed to the appellate court. The appellate court found that the trial court's finding that Ford's property had been overvalued by the assessor was against the manifest weight of the evidence and reversed. (166 Ill. App. 3d 373.) We allowed Ford's petition for leave to appeal from the appellate court's judgment pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315).

The record discloses that in 1981, Ford owned and operated an automotive manufacturing facility in Cook County, Illinois, that stamped metal into auto body parts. The facility was situated on a 133-acre tract of land located in an unincorporated area of Cook County at the intersection of Cottage Grove Avenue and Lincoln Highway in Bloom Township. The stamping plant totaled approximately 2.5 million square feet and consisted of one main building, which housed the manufacturing facilities and administrative offices, and 11 support buildings, such as a powerhouse, an oil shed and storage facilities.

Under the Cook County Real Property Assessment Classification Ordinance, Ford's stamping plant is a Class V property, and, as such, is assessed at 40% of its fair market value. (Cook County Real Property Assessment Classification Ordinance §§13—14, 13—15 (1980).) For the tax year 1981, the assessed value of Ford's property was $13,626,634, which corresponded to a market value of $34,066,585. The assessed value resulted in property taxes of $1,783,381.49 for that year. Ford, believing that the assessed valuation was excessive, paid the taxes under protest, and then appealed to the board of appeals of Cook County to challenge the 1981 assessment. The board made no change in the assessment.

The Cook County collector made an application for judgment and order of sale of all real estate on which the taxes for the year 1981 had not been paid in full, and also made application to the court for a determination of the correct amount of property taxes paid in full under protest. Pursuant to section 235 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 716), Ford timely filed with the circuit court of Cook County its objection to the Collector's application, alleging, among other things, that the assessment was constructively fraudulent and that Ford was entitled to a tax refund of $762,558.92.

In December 1985, a bench trial was held at which Ford sought to prove constructive fraud on the part of the assessor by establishing that the assessor's valuation of its property was grossly excessive. At trial, Ford offered the expert testimony of John Shanahan, a certified real estate appraiser. Shanahan testified that he had been hired by Ford to render an appraisal of the stamping plant's value in the fall of 1980 and that he believed the property had a fair market value of $19.5 million, an amount more than $14 million less than that calculated by the assessor, as of January 1, 1981. Shanahan explained that in appraising Ford's property he had utilized the three commonly accepted approaches in appraising property values, the cost, income and market data approaches. An explanation of the three approaches used by Shanahan is provided in the appellate court's opinion and need not be repeated here. 166 Ill. App. 3d at 375-76.

Shanahan stated that, in his opinion, under the market data approach, the Ford property had an appraised value of $19.5 million; under the cost approach, a value of $20,435,000; and, under the income approach, a value of $17,870,000. Shanahan explained that, although he considered all three approaches in arriving at his final estimate of fair market value, he relied most heavily on the market data approach because he considered that approach to yield the most accurate estimate of value. Shanahan stated that he considered the cost approach to be a sound approach to use in determining property values and that, after the market data approach, he placed the most reliance on that method of valuing property. Of the three approaches used, Shanahan testified, he gave the least weight to the income approach.

In response, the Collector called Bruce H. Brenner, also a certified real estate appraiser, as an expert witness. Brenner testified that he had been hired by the affected school district to appraise Ford's property in 1984, over

three years after the assessment. Brenner used the same approaches to appraise the property as Shanahan had and concurred with Shanahan on the relative weight that each of these approaches should be given. Using the market data approach, Brenner estimated that the stamping plant's value was $28 million as of January 1, 1981, using the cost approach $30 million, and the income approach $25 million. Brenner's final estimate of value was $28 million.

The Collector then called as a witness Arthur R. Goepp, who had worked for Ford as a property assessment evaluator for 23 years. In that capacity, Goepp reviewed property tax assessments and then prepared appraisals of Ford's property that, on occasion, were submitted to local assessing authorities. Goepp was then asked to identify a document that he had prepared in the summer of 1979. This document was entitled a Memorandum of Value and purported to give an estimate of the stamping plant's market value based on the cost approach. The memorandum listed the appraised value of the stamping plant as $34,150,000 as of January 1980. Goepp explained that he had prepared the memorandum in question as an advisory, in-house suggestion of value to assist Ford's local tax attorneys. The court took judicial notice of the fact that Ford had submitted the document prepared by Goepp to the Cook County assessor's office.

On June 19, 1986, the trial judge issued an order in favor of Ford. The judge stated that Ford had overcome the presumption that the assessment of its property based upon a market value of $34,065,582 was correct. In making this determination, the judge stated that he had considered the testimony of the expert witnesses, as well as other matters. The judge then said that, once the presumption of the validity of the assessment had been overcome, it was incumbent on the assessor to produce evidence to justify the assessment, but, because no such

evidence had been produced, the presumption of correctness had disappeared.

The judge then proceeded to make his own determination of the stamping plant's value as of January 1981 and found that under both the market data and cost approaches to valuation the Ford property was worth $22.8 million. The trial judge then stated that the market value as indicated by the assessment was so excessive when compared to his finding of the market value that the assessment constituted a constructive fraud, and that Ford had proved by clear and convincing evidence that the assessment of its property was constructively fraudulent. On July 1, 1986, the judge ordered the Collector to refund $589,804.34 of the 1981 taxes paid under protest by Ford.

On appeal to the appellate court, the Collector raised two issues for review, arguing first that Ford's evidence had fallen short of the clear and convincing standard necessary to prove that the assessment was constructively fraudulent and, second, that in reaching his decision, the trial judge had erred by considering matters outside the record. An undivided panel of the appellate court reversed the trial court's judgment. The appellate court stated that the weight of the evidence supported the assessor's finding that the property had a fair market value of $34,066,585 rather than the trial judge's finding that the plant was worth $22.8 million. The appellate court then concluded that, because Ford had failed to prove an overvaluation of the stamping plant by the assessor, the trial court had erred in its determination that the assessment was constructively fraudulent.

Here, Ford argues that the trial judge's finding that the stamping plant had a value of $22.8 million is fully supported by the record and contends that, in light of this finding, the trial judge was justified in concluding that the assessment was constructively fraudulent. Ford argues further that, because the trial court's decision was not

against the manifest weight of the evidence, the appellate court exceeded the proper scope of appellate review by reweighing the evidence and substituting its judgment for that of the trier of fact. Thus, in addressing this argument, we must first consider whether the trial judge's finding regarding the value of Ford's property was against the manifest weight of the evidence. If the finding of overvaluation is supported by the record, we must further determine whether, given the overvaluation, the trial court was justified in concluding that the assessment was constructively fraudulent.

Although a trial court's decision is always subject to review, a reviewing court should not overturn a trial court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the trier of fact. (*Sexton v. Smith* (1986), 112 Ill. 2d 187, 194; *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 110; *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.) The trial judge, as the trier of fact, is in a position superior to a court of review to observe the demeanor of witnesses while testifying, to judge their credibility and to determine the weight their testimony should receive. (*Greene,* 73 Ill. 2d at 110; *Schulenburg,* 37 Ill. 2d at 356.) Consequently, where the testimony is conflicting in a bench trial, the court's findings will not be disturbed unless they are against the manifest weight of the evidence. *Greene,* 73 Ill. 2d at 110; *Schulenburg,* 37 Ill. 2d at 356.

Based on our review of the record, we agree with Ford that the trial court's finding that the stamping plant had a value of $22.8 million as of January 1, 1981, was not against the manifest weight of the evidence and that the appellate court erred in determining that it was. Shanahan, Ford's expert witness, testified that, in his opinion, the Ford plant had a market value of $19.5 million on the date in question. Brenner, the Collector's ex-

pert witness, offered conflicting testimony that the property had a value of $28 million. Additionally, the Collector offered the testimony of Goepp and the document prepared by him estimating the value of the property to be $34,150,000 one year prior to the assessment date. After reviewing the tax records and written appraisals, hearing the testimony of the witnesses, and independently weighing the factors used by the expert witnesses to value the property, the trial judge arrived at his own determination that the property's fair market value was $22.8 million. This figure is within the range of estimates offered by Ford's and the Collector's witnesses, and, on review, we cannot say the trial judge's finding regarding the value of the property is against the manifest weight of the evidence.

However, because the record supports the trial court's finding that the assessor overvalued Ford's property does not necessarily mean that the trial court was justified in setting aside the assessment. (See *People ex rel. Nordlund v. S.B.A. Co.* (1966), 34 Ill. 2d 373, 377.) This court has repeatedly held that the taxation of property is a legislative rather than a judicial function (*S.B.A. Co.*, 34 Ill. 2d at 376), and that, in the absence of fraud, the courts have no power to review the valuation of property fixed for taxation purposes by the appropriate assessing officers (*People ex rel. Munson v. Morningside Heights, Inc.* (1970), 45 Ill. 2d 338, 340).

A taxpayer may challenge an assessment on the basis of either actual or, as here, constructive fraud. (*In re Application of Rosewell* (1985), 106 Ill. 2d 311, 318.) A presumption exists that a tax is just and that the officers levying it have honestly discharged their duties (*People ex rel. Ingram v. Wasson Coal Co.* (1949), 403 Ill. 30, 37); the burden is on the taxpayer to establish, by clear and convincing evidence, that the taxing authorities have not exercised their honest judgment and that the assessment is construc-

tively fraudulent. (See *In re Application of Rosewell* (1985), 106 Ill. 2d 311, 318; *People ex rel. Schmulbach v. City of St. Louis* (1951), 408 Ill. 491, 500-01.) This court has held that, depending on the circumstances in a particular case, a property may be so grossly overvalued as to warrant the conclusion that the assessment is not the result of the assessing officer's honest judgment and is therefore constructively fraudulent. *People ex rel. Rhodes v. Turk* (1945), 391 Ill. 424; *People ex rel. McGaughey v. Wilson* (1937), 367 Ill. 494; *People ex rel. Wangelin v. Gillespie* (1934), 358 Ill. 40; *People ex rel. Wangelin v. Wiggins Ferry Co.* (1934), 357 Ill. 173; *People ex rel. Wangelin v. St. Louis Bridge Co.* (1934), 357 Ill. 245; *People ex rel. Carr v. Stewart* (1924), 315 Ill. 25.

The cases in which this court has found assessments to be constructively fraudulent based on excessive overvaluations have all, with one exception, included evidence of the circumstances surrounding the assessment. The one exception will be discussed later. The circumstances have indicated that, in fixing the value of the property, the assessing officer failed to exercise his or her honest judgment either by ignoring the known value of the property or by failing to consider and apply recognized standards by which the value of property is determined. *Turk*, 391 Ill. at 426 (assessor disregarded amount property brought at a recent sale); *Wilson*, 367 Ill. at 497 (same); *Gillespie*, 358 Ill. at 45 (assessor failed to consider both rental value and fair market value of property); *Wiggins Ferry*, 357 Ill. at 181 (assessor based valuation on a speculative future value that was contingent on the happening of an uncertain event and not on what the property would fairly sell for at the time of the assessment); *St. Louis Bridge*, 357 Ill. at 254 (assessment of property resulted from public demand and not from a thorough investigation of the actual value of the property); *Stewart*, 315 Ill. at 30 (as-

sessor refused to consider recent sales of property in determining property's value).

Conversely, this court has repeatedly declined to set aside excessive assessments on records showing only that the properties have been overvalued by the assessing officers. (See, *e.g., Morningside Heights, Inc.*, 45 Ill. 2d 338; *People ex rel. Joseph v. Schoenborn* (1968), 41 Ill. 2d 302; *People ex rel. Frantz v. M.D.B.K.W., Inc.* (1966), 36 Ill. 2d 209; *S.B.A. Co.*, 34 Ill. 2d 373; *People ex rel. Johnson v. Robison* (1950), 406 Ill. 280; *People v. The Process Corp.* (1941), 377 Ill. 65; *People ex rel. Harding v. Atwater* (1936), 362 Ill. 546; *People ex rel. Nash v. Norton* (1934), 358 Ill. 272; *People ex rel. Thompson v. Bourne* (1909), 242 Ill. 61; see also Cushman, *The Judicial Review of Valuation in Illinois Property Tax Cases*, 35 Ill. L. Rev. 689, 691 (1941); but see *People ex rel. Little v. St. Louis Electric Bridge Co.* (1919), 290 Ill. 307.) In the foregoing cases, the differences in opinion regarding the value of the assessed property ranged from 25% to 80%. While the extent to which a property has been overvalued by the assessing officer is a factor considered by the court in deciding whether an assessment is constructively fraudulent (see *S.B.A. Co.*, 34 Ill. 2d at 377), proof of overvaluation, alone, will not establish fraud (*Robison*, 406 Ill. at 282-83). To be fraudulent, the overvaluation of property must not only be excessive, it must also be made under circumstances indicating that the assessment was not made in the exercise of honest judgment. *The Process Corp.*, 377 Ill. at 68.

Some language in our prior decisions might be construed as indicating that proof of an overvaluation, if sufficiently excessive, would, by itself, establish constructive fraud on the part of the assessing authority or, at least, rebut the presumption of the assessment's validity and shift the burden to the assessor to explain the assessment. (See *People v. International Business Machines*

*Corp.* (1982), 89 Ill. 2d 287, 293 (and cases cited therein).) However, as the above discussion demonstrates, in the cases dealing with constructive fraud based on overvaluation, this court, with one exception, has consistently required proof of more than evidence of an overvaluation to establish fraud. The one instance in which this court upheld a finding of constructive fraud on evidence showing only an overvaluation occurred in *St. Louis Electric Bridge Co.*, 290 Ill. 307. Since that case was decided, this court has considered the amount of the overvaluation in conjunction with the circumstances surrounding the assessment, and we believe these later cases are better reasoned. The requirement of some showing of circumstances indicating that the assessment is not the product of the assessor's honest judgment avoids speculation on how great the overvaluation must be before the court will consider the assessment to be "grossly excessive."

This court's decisions in *Morningside Heights, Inc.* and *M.D.B.K.W.* illustrate that mere proof of an excessive assessment does not shift the burden to the assessing authority to explain the assessment. See also *Turk*, 391 Ill. at 426 (assessor's testimony failing to explain formula used in valuing property together with taxpayer's proof of overvaluation vitiated presumptive effect of the correctness of the assessed valuation).

We recognize that, given this burden of proof, the taxpayer may be required in some cases to call the assessor to testify as to the manner in which the assessment was made. In the cases cited above in which constructive fraud had been established, a member of the assessing authority offered testimony which failed to explain satisfactorily how the value of the property in question was determined. For example, this court distinguished its holding in *Morningside Heights, Inc.* (no constructive fraud) from its holding in *Turk* (finding constructive fraud) on the basis that the assessor's testimony in *Turk*

had demonstrated that the assessment had not been properly determined while in *Morningside Heights, Inc.* there was no similar testimony. (*Morningside Heights, Inc.*, 45 Ill. 2d at 342.) We do not believe requiring the taxpayer to offer evidence of the circumstances surrounding the assessment imposes an undue burden.

Tested against the background of our prior decisions, we believe that, in the present case, the trial court erred in its determination that Ford proved the 1981 assessment of the stamping plant to be constructively fraudulent. The record shows that the difference in the opinions of Ford's expert and the assessor amounted to 40% and the difference between the court's and the assessor's opinions was 33%. Yet, as our prior decisions make clear, evidence of such a discrepancy alone does not prove constructive fraud. "[W]e have uniformly held that the assessed value of property for taxation purposes cannot be impeached merely because of a difference in opinion as to its value as between the assessing officers and a court." (*Robison*, 406 Ill. at 282-83.) The objecting taxpayer must offer some additional evidence that the discrepancy is not the result of the assessor's mistaken judgment. Here, unlike the cases in which this court found assessments to be constructively fraudulent, no evidence was presented concerning the circumstances under which the assessment was made from which the trial court could determine that the assessment was not based on the assessor's honest judgment. Consequently, the trial court was not justified in concluding that the overassessment of Ford's property constituted a constructive fraud in this case.

In addition, we note two factors present in this case which tend to support the conclusion that the assessment was honestly, if erroneously, made. First, the compromise nature of the trial court's finding as to value suggests that differing opinions regarding value might be honestly reached by various parties appraising the same property.

(See *S.B.A. Co.*, 34 Ill. 2d at 378.) Second, and more significantly, only one year prior to the assessment in question, Ford itself estimated the value of the property to be $34,150,000, an amount slightly greater than its assessed value. There is nothing in the record to indicate the property declined substantially in value between 1980 and 1981. Therefore, unless we assume that Ford prepared and submitted to the assessor an appraisal which was not the product of its honest judgment, we must conclude that, in appraising the same property only one year later, the assessor might also have honestly judged the property to be worth approximately $34 million. (See *The Process Corp.*, 377 Ill. 65 (in which the court concluded that the taxpayer had not shown constructive fraud where, one year prior to the assessment, the taxpayer had prepared and submitted a tax return valuing the property in question at an amount greater than the challenged assessment).) In this case, given the lack of evidence regarding how the assessment was actually made and given the indications that it was the product of the assessor's honest judgment, we do not believe that Ford proved that the overvaluation of its property constituted a constructive fraud. In light of this conclusion, we need not address alternative arguments raised by the Collector for affirming the appellate court's judgment.

For the reasons stated, the judgment of the appellate court, reversing the trial court and reinstating the original assessment of the property, is affirmed.

*Appellate court affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.